593 So.2d 776 (1992)
Yvonne L. HUGHES, Individually and on Behalf of her Minor Children, Malika I. Evans and Maisha Evans
v.
GULF INTERNATIONAL and/or Eastlake Cinema Eight Theatre, et al.
No. 91-CA-0495.
Court of Appeal of Louisiana, Fourth Circuit.
January 16, 1992.
Writ Denied April 3, 1992.
*778 Joseph W. Thomas, New Orleans, for plaintiffs-appellees.
Michael E. Holoway, Jack E. Truitt, James A. Williams, Holoway, McQuaig, Solomon & Dyer, Metairie, for defendants-appellants.
Before LOBRANO and PLOTKIN, JJ., and GULOTTA, J., Pro Tem.
JAMES C. GULOTTA, Judge Pro Tem.
Defendants Gulf NATO Theatres, Inc. and LaDoris Manning appeal a trial court judgment awarding plaintiff Yvonne L. Hughes damages for assault and battery and for false arrest and imprisonment, as well as a judgment awarding Ms. Hughes' daughter Maisha Evans damages for assault and battery. We reverse the portion of the judgment finding defendants liable for false arrest and imprisonment, and affirm the trial court's decision on the other liability issues, but reduce the damage awards, which were excessive.
I. FACTS
This litigation grows out of an incident at the Eastlake Cinema 8 Theater in New Orleans East, which occurred on March 30, 1986, Easter Sunday. Ms. Hughes attended a movie at the defendant's cinema after church that day, along with her two 13-year-old twin daughters, Maisha and Malika, and a 15-year-old companion, Tamika Grant. The testimony presented at trial concerning some of the details of the incident was inconsistent, but the following facts are uncontested:
After the parties had selected seats for the movie in the screening room, Maisha asked her mother for money to go to the concession stand. While at the stand, Maisha had a verbal confrontation with the defendant, Ms. Manning, who was working behind the counter. When Maisha returned to her seat, she told her mother about the incident, which prompted Ms. Hughes to return to the concession counter with her daughter.
After Ms. Hughes approached Ms. Manning, the situation quickly deteriorated into a shouting match. Assistant Manager Mike Curtis, who was acting as manager that day, approached the women to determine the problem. Eventually, Mr. Curtis asked Ms. Hughes to leave the theater. She initially refused, then insisted on going back into the screening room to get Malika and Tamika. Although Mr. Curtis refused to allow her to return to the screening room, she nonetheless started advancing in that direction.
About this time, Andre Scott, a security guard who worked for Highway Patrol Security, Inc. patrolling the entire Eastlake Mall, arrived on the scene. He joined Mr. Curtis in trying to prevent Ms. Hughes from going back into the screening room. At some point while the group was advancing toward the screening room, Ms. Hughes bit Mr. Curtis on his upper arm. Mr. Curtis delivered a karate chop to the back of Ms. Hughes' neck, and she fell to the floor. When the New Orleans Police arrived, Ms. Hughes was arrested and taken to Central Lockup; her daughters accompanied her in the police car. She was immediately released after being booked with causing a disturbance, battery, and criminal damage. Those charges were eventually nol prossed.
Aside from the above facts, the description of the events as related at trial by the two sides varied dramatically. The plaintiffs claim that Ms. Manning was very rude to Maisha when she approached the concession stand, while the defendants claim that Maisha was very rude to Ms. Manning. The plaintiffs claim that Ms. Manning instigated the confrontation with Ms. Hughes *779 when she returned to the lobby with her daughter, while the defendants claim that Ms. Hughes instigated the confrontation. The plaintiffs claim that Ms. Hughes was struck several times by both Mr. Curtis and Mr. Scott during the ensuing incident, while the defendants claim that the karate chop delivered by Mr. Curtis was for the sole purpose of getting Ms. Hughes to let go of his arm and was the only blow delivered by any of the defendants. The plaintiffs also claim that Mr. Curtis threw Maisha against a wall after she returned from the screening room with Malika and Tamika, while the defendants claim that no one ever touched either of the girls, except perhaps while trying to control the incident and keep people out of harm's way. Numerous other inconsistencies in the two accounts are revealed in the record.
On behalf of herself and her minor children, Ms. Hughes filed suit for assault and battery, as well as for false arrest and imprisonment, against Gulf NATO Theatres, Inc., which owned the Eastlake Cinema Eight Theatres; its employees, LaDoris Manning and Mike Curtis; the security guard, Andre Scott; and his employer, Highway Patrol Security, Inc.
After a four-day trial, a jury found that Ms. Hughes had been unjustly assaulted and battered by the theater, its employees and Mr. Scott, and that the theater employees, but not Mr. Scott, had used excessive force in repelling any attack Ms. Hughes committed on them. Additionally, the jury found that the theater employees, but not Mr. Scott, had unreasonably caused the arrest and imprisonment of Ms. Hughes. The jury assigned the following percentages of fault: Ms. Hughes, 30 percent; Mr. Scott, 10 percent; and theater employees, 60 percent.
The jury also found that Maisha suffered assault and battery at the hands of theater employees, assigning 10 percent of the fault for those damages to Maisha and 90 percent to the theater employees. The jury set the plaintiffs' awards as follows: Ms. Hughes, $135,000; Maisha, $30,000; and Malika, $30,000.
The trial court entered judgment awarding Ms. Hughes $81,000 against Gulf NATO Theatres and $13,500 against Highway Patrol and Mr. Scott. Maisha was awarded $27,000 against Gulf NATO Theatres. Malika's claim was dismissed by the trial court because it was inconsistent with the jury's express finding that Malika was not assaulted or battered by any of the defendants. Highway Patrol satisfied the judgment by paying Ms. Hughes $8,250. Gulf NATO Theatres and LaDoris Manning filed this appeal, making numerous assignments of error, all of which fall roughly into the following three categories: liability, damages, and impeachment.
II. LIABILITY
The defendants contest all of the jury's findings on liability for the alleged assault and battery of Ms. Hughes and Maisha, and for the alleged false arrest and imprisonment of Ms. Hughes.
A. Assault and Battery
Concerning the assault and battery of Ms. Hughes, the defendants argue that the jury was clearly wrong in two respects: (1) failing to find that Ms. Hughes was the aggressor in the incident and thus not entitled to damages, and (2) finding that the theater employees, especially Mr. Curtis, used excessive force in repelling Ms. Hughes' attack. The defendants also claim that Maisha failed to prove by a preponderance of the evidence that she was assaulted and battered by theater employees.
After reviewing the record, we affirm the trial court judgment on the assault and battery issues. As stated above, the stories related by the two sides of the controversy at trial were greatly disparate. In such a situation, the jury verdict is based entirely on credibility determinations. Appellate court review of the trial court findings based on credibility calls has been severely limited, as evidenced by the following quote from Rosell v. ESCO, 549 So.2d 840 (La.1989):
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong *780 standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness' story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness' story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Id. at 844-45. (Citations omitted.) See also Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106, 1111 (La.1990). Thus, in this case, this court is required to affirm the trial court judgments, which are based on credibility. We find that the plaintiffs presented sufficient evidence from which the jury could reasonably have concluded that both Ms. Hughes and Maisha suffered assault and battery at the hands of the theater employees. Liability as found by the trial court on the assault and battery issues is affirmed.
B. False Arrest and Imprisonment
On the false arrest and imprisonment issues, the defendants claim that the jury was clearly wrong in finding them liable because Ms. Hughes failed to prove either that she was actually detained by any of the theatre's employees or that the defendants improperly instigated her alleged false arrest and imprisonment.
The evidence presented at trial indicates that one of the theater employees called the police on Mr. Curtis' request during the time that Mr. Curtis and Mr. Scott were trying to prevent Ms. Hughes' entrance into the screening room. Upon their arrival, the arresting officers asked Ms. Hughes to go into the theater manager's office to discuss the incident. When she refused to accompany them to the office, she was arrested. Sergeant Edward McGee, who made the arrest, testified as follows:
Well, like I said, after all that took place, we informed her she was under arrest because the complaint of the manager, he wanted to file charges on her, so I informed her she was under arrest.... [sic]
Two elements are required to prove a case in false arrest and imprisonment: (1) detention of a person and (2) unlawfulness of the detention. Restrepo v. Fortunato, 556 So.2d 1362 (La.App. 5th Cir.), writ denied 560 So.2d 11 (La.1990); Touchton v. Kroger Co., 512 So.2d 520 (La.App. 3d Cir. 1987).
In the instant case, Ms. Hughes was detained only when she was arrested by the police. The record indicates that this detention was lawful. The entirety of the arresting officer's testimony established that he investigated this incident, spoke to all parties involved and concluded there was probable cause to arrest Ms. Hughes. Ms. Hughes caused a disturbance in the presence of the police officers by cursing and refusing to cooperate. Although the police were called to the theater on the complaint of defendants, the decision to arrest was made by the arresting officer and not by the theater employees. Therefore, we disagree with the jury's finding that defendants unreasonably caused Ms. Hughes to be wrongly arrested and imprisoned. Accordingly, that portion of the trial court's judgment finding defendants liable for false arrest and imprisonment is reversed and set aside.
III. DAMAGES
Defendants claim that the $135,000 award to Ms. Hughes and the $30,000 award to Maisha are excessive.
In deciding whether a trial court award was excessive, reviewing courts must first consider the individual circumstances of the matter to determine whether the trial court abused its much discretion in setting the award. Bernard v. Royal Insurance Co., 586 So.2d 607 (La.App. 4th *781 Cir.1991). A jury's award cannot be found excessive as a matter of law simply because of its size. Id. at 612. The following rule applies:
The question is not whether a different award might have been more appropriate, but whether the award of the trial court can be reasonably supported by the evidence and justifiable inferences from the evidence before it.
Amedee v. Cruse, 526 So.2d 433, 433 (La. App. 4th Cir.1988), citing Bitoun v. Landry, 302 So.2d 278, 279 (La.1974). Under the circumstances presented by the instant case, we have no difficulty concluding that the damage awards set by the jury were excessive.
After determining that the award in the instant case was improper, the reviewing court may consider awards in similar cases. Amedee, 526 So.2d at 436. Using the similar cases as guidance, the reviewing court may then increase or decrease the award only to the lowest or highest award which would have been within the trial court's discretion. Id.
A. Ms. Hughes' Damages

1. Special Damages
In the instant case, Ms. Hughes failed to present any evidence of medical treatment for physical injuries allegedly suffered as a result of the assault and battery. Ms. Hughes testified that she went to Pendleton Memorial Hospital the night after the incident for treatment of her injuries, but no medical records were produced. Ms. Hughes stated that she was most concerned about some injury caused by the karate chop to the back of her neck. She stated that she also suffered bruises and other minor physical injuries which were resolved without incident within a "few months."
However, Ms. Hughes claims that she suffered emotional and psychological damage as a result of the incident at the movie theater. She offered the testimony of Dr. Beverly Howze, Ph.D. in clinical psychology, in support of this allegation.
Dr. Howze testified at trial that she had treated Ms. Hughes and her children since May 5, 1986, a little more than a month after the theater incident. She stated that Ms. Hughes suffers from a generalized anxiety disorder, which causes her to operate with an enormous amount of internal pressure and anxiety, and that she also suffered from a histrionic panic disorder, which causes her to respond to events with great immediacy and may cause her to act precipitiously or impulsively. This expert stated that Ms. Hughes tends to view herself as a victim, and to suffer feelings of helplessness and depression. Dr. Howze stated that Ms. Hughes is hypersensitive.
Dr. Howze attributed Ms. Hughes' emotional and psychological problems to a number of factors, including the death of her parents at an early age, her separation from her children's father, and the breakup of her marriage. The loss of her parents at an early age makes it difficult for her to form relationships, Dr. Howze stated.
Dr. Howze stated that she and Ms. Hughes had discussed at length the theater incident. It was her opinion that the incident aggravated Ms. Hughes' pre-existing personality disorder. The doctor provided no details on how the incident aggravated the problems, nor did she state the extent of the aggravation, saying only that the theater incident was one of a number of things they had discussed.
Dr. Howze stated that Ms. Hughes would require three to five years of twice-a-week therapy sessions to resolve her overall personality disorder. She estimated the total cost of the future psychological treatment at $57,600, but was unable to say what percentage of that treatment was made necessary by the incident at the theater. The cost of her past treatment was set at $1900. Total cost of past and future treatment was $59,500.
In light of the above facts, we believe that the highest percentage of Ms. Hughes psychological problems which the jury could reasonably have attributed to the theater incident is 25 percent. Thus, we award Ms. Hughes 25 percent of the total cost of past and future psychological treatment *782 set by Dr. Howze. That amount is $14,875.

2. General Damages
The jury found the theater liable to Ms. Hughes for both assault and battery and false arrest and imprisonment. As stated above, we reverse that portion of the trial court judgment finding the theater liable for false arrest and imprisonment.
A search of recent Louisiana cases involving assault and battery under somewhat similar circumstances to those presented by the instant case indicates that the highest amount the jury could reasonably have awarded for this element of damages is $10,000. This determination is based on a study of the following cases: Jordan v. Hubbard, 541 So.2d 211 (La.App. 4th Cir.), writ not considered 543 So.2d 13 (La.1989), in which the court reduced a $35,000 jury award for damages resulting from assault and battery to $10,000 in light of the minor injuries received by the plaintiff; Red v. Taravella, 530 So.2d 1186 (La. App. 2d Cir.1988), in which the court reduced a $20,000 award to $10,000 for a plaintiff involved in a bar fight who suffered cuts and bruises; Winstead v. Watson, 528 So.2d 691 (La.App. 2d Cir.1988), in which the court increased a $5,000 general damage award to $10,000 in light of the fact that the plaintiff suffered a cerebral concussion, two fractures of the lower jaw, and traumatic opacification of the left maxillary sinus.
B. Maisha's Damages

1. Special Damages
The plaintiffs presented no evidence whatsoever that Maisha suffered any physical injuries as a result of the alleged assault and battery. The plaintiffs claim, however, that she suffered psychological damage as a result of the incident.
Dr. Howze testified that she had counseled both of Ms. Hughes daughters, and that both of them had developing personality problems which caused them to react in much the same way as their mother. Much of the children's problems were caused by their desire to live with their father and their anger at their mother for removing them from the general area where their father lives, Dr. Howze indicated.
However, the incident at the theater did cause some psychological problems for the children, Dr. Howze stated, because it changed the way they perceived their mother. Following the incident, the children, who had previously been fairly passive, began to engage in inappropriate "acting out" behavior, which even included physical confrontations with Ms. Hughes, she said. The children also became overly concerned about their mother, Dr. Howze said. The bottom line, according to Dr. Howze, is that the incident aggravated the children's developing personality problems, which were also caused by their removal from their father and the attendant circumstances.
The cost of past treatment for the children was $360. Dr. Howze testified that the children would require about three years of once-a-week therapy sessions to correct their personality disorders; the estimated cost was $34,560 for both children. The total cost for past and future treatment for the two children was $34,920, or $17,460 per child. Dr. Howze was unable to attribute a percentage of that treatment to the incident at the theater.
On the basis of the above, we find that Maisha is entitled to recover 10 percent of the total estimated cost for her psychological treatment from the defendants. She is thus awarded $1,746 in special damages.

2. General Damages
The jury found the defendant liable to Maisha for assault and battery, based on her testimony that one of the theater employees threw her against the wall when she came out of the screening room after going to get Malika and Tamika. No evidence that Maisha suffered physical injury was presented at trial. After considering the general damage awards in the assault and battery cases cited above in light of her lack of injury, we find that the highest amount the jury could reasonably have awarded Maisha for assault and battery is $2,500.
*783 C. Summary of Damages
We find that Ms. Hughes is entitled to receive the following damages:

Special Damages $14,875
General Damages  Assault and battery 10,000
 _______
TOTAL $24,875

This total must be reduced by 10 percent to reflect the percentage of liability attributed to Highway Patrol and by 30 percent to reflect Ms. Hughes' comparative negligence. Thus, Ms. Hughes' total award is $14,925.
Maisha is entitled to receive the following damages:

Special Damages $1,746
General Damages (Assault and battery) 2,500
 ______
TOTAL $4,246

This total must be reduced by 10 percent to reflect Maisha's comparative negligence as found by the jury, making her total damages $3,821.40.
IV. IMPEACHMENT
The defendants argue that the trial court erred in permitting the plaintiffs to recall Ms. Manning for impeachment purposes. The defendants claim that the trial court allowed the plaintiffs to conduct a discovery deposition at trial.
Ms. Manning originally testified as a part of the defendant's case-in-chief; the plaintiffs cross-examined her at that time. The next day, plaintiffs requested permission to recall Ms. Manning to question her concerning an alleged conviction. Plaintiffs' attorney questioned Ms. Manning outside the presence of the jury; Ms. Manning stated that she had been convicted once 14 years before, but that she had not been convicted of any crimes "recently." The judge ruled at that time that plaintiffs could not question Ms. Manning about the conviction in front of the jury because the conviction had occurred more than ten years prior to trial.
The next day, the plaintiffs again recalled Ms. Manning out of the presence of the jury, at which time she admitted that she had pled guilty to prostitution three times around 1981 or 1982. At that time, the trial court allowed the plaintiffs to question Ms. Manning about the convictions before the jury for impeachment purposes.
If the trial court erroneously allows re-cross examination testimony, the appellate court must reverse the ruling and conduct a trial de novo only if the entire record reveals that the ruling was prejudicial; that is, that the ruling tainted the jury verdict. Community Bank v. Motel Management Corp., 558 So.2d 641 (La. App. 1st Cir.1990).
In the instant case, we find no such prejudice. It is clear from the record as we view it, that the evidence of Manning's convictions did not taint the jury's verdict and therefore was not prejudicial to the defendants. Thus, this assignment of error has no merit.
V. CONCLUSION
Accordingly, it is ordered that the judgment finding defendants liable for false arrest and imprisonment be reversed and set aside. It is further ordered that the judgment in favor of Ms. Hughes be amended to $24,875.00, reduced by 40% to $14,925.00. It is further ordered that the judgment in favor of Maisha Evans be amended to $4,246.00, reduced by 10% to $3,821.40. The amount of the awards are to bear interest from date of judicial demand until paid. In all other respects, the judgment is affirmed.
REVERSED IN PART; AMENDED IN PART AND AS AMENDED, AFFIRMED.