907 So.2d 831 (2005)
Nachole SMITH, Plaintiff-Appellant
v.
Randy KNIGHT and Barbara Hunt, dba R & B Groceries, Defendant-Appellees.
No. 39,781-CA.
Court of Appeal of Louisiana, Second Circuit.
June 29, 2005.
*832 Brister & Brister by Kenneth Brister, Lake Providence, for Appellant.
James E. Paxton, Tallulah, for Appellees.
Before BROWN, PEATROSS and MOORE, JJ.
MOORE, J.
Nachole Smith sued her former employer, Barbara Hunt d/b/a R & B Trak Grocery, and the store manager, Randy Knight, for defamation, false imprisonment *833 and malicious prosecution arising from an investigation of $800 that disappeared from the store's safe. The district court granted a judgment of involuntary dismissal at the close of Ms. Smith's case, and she now appeals. For the reasons expressed, we affirm.

Factual Background
R & B Trak Grocery is a convenience store and gas station on Hwy. 4 in Newellton, Louisiana. In September 2001, Barbara "Bobbie" Hunt owned and operated the store. Randy Knight was the store manager.
According to Ms. Smith's petition, about three hours after she arrived at work on September 7, 2001, she was accused by Ms. Hunt of stealing money from the store, taken into custody by the Tensas Parish Sheriff's Office, and arrested for theft; the next day, however, Ms. Hunt phoned her to apologize, saying they had found the missing money, but did not offer Ms. Smith's job back. Ms. Smith filed this suit in October 2001, seeking damages for "negligent, erroneous allegations, false imprisonment and malicious prosecution."[1]
At trial, witnesses presented a rather less dramatic account of the incident. Ms. Hunt testified that Ms. Smith had been employed at the store for about two weeks. On September 7, Ms. Hunt worked in the office, located in the rear of the store, until about 3 p.m., when she came up front to work the register. She admitted she left open the door to the office as well as the door to the safe, which contained about $800 cash. Sometime around dark, she returned to the office and discovered the money missing. She and the store manager, Knight, searched the office without success.
Knight then went to the front of the store, locked the door and spoke to all employees present  Ms. Smith, Josephine Ezell (who did not testify), and the grocery manager, Paula Knight. He told them that money had disappeared from the safe, and if the person who took it would return it right away, there would be no repercussions, but if she didn't, and they found out who was responsible, they would prosecute to the full extent of the law. All denied taking the money. Meanwhile, Ms. Hunt phoned the sheriff.
Newellton Police Officers Glen Thompson and Carl Jones, as well as Tensas Parish Dep. Jack McMillan, arrived within 5-10 minutes. By this time, Knight had viewed a surveillance videotape which showed that while Ms. Hunt was out of the office, the only other person to go in was Ms. Smith. Knight showed the tape to the officers. According to all who saw it, the tape showed Ms. Smith go in the office and close the door behind her, so her activities inside could not be discerned, but she did not appear to carry anything out or pass off money to any customer in the store. Knight denied accusing Ms. Smith specifically, but according to Officer Thompson, Knight said she was the only person who could have taken it. For this reason, the officers asked Ms. Smith to come to the police department.
At the police department, officers took her into the council room and read her her Miranda rights. She told them she had entered the office, but only because Paula Knight had asked her to stock the cooler. (Ms. Knight confirmed that she told Ms. Smith to fill the cooler, and everyone admitted that the store kept extra soft drinks in the office.) Saying they did not have enough evidence to arrest her for theft, *834 the officers took Ms. Smith home. Officer Thompson estimated she spent between 15-35 minutes at the station; Ms. Smith put the time at about 30 minutes.
Ms. Smith testified that officers did not let her use the phone, and never told her she was free to leave. She explained, "I figured after they read me my rights, I thought I had to stay because that was my first time to get my rights read to me."
Early the next morning, Ms. Hunt returned to the store and found the missing money locked in the safe. Neither she nor Knight knew how this happened, but she promptly phoned the police to call off the investigation. Later she called Ms. Smith and apologized, but told her (according to Ms. Smith), "Better luck at your next job." Ms. Smith understood this as Ms. Hunt's way of firing her. She testified that because of this incident, she could not get work at the other local convenience store, Circle K. She ultimately moved to Tallulah and found similar work there.

Trial Procedure
At the beginning of trial, Ms. Smith's counsel objected to any reference to the content of the surveillance videotape unless the tape itself could be introduced; the court stated it would view the tape. Defense counsel said R & B Trak had "an installed camera system" which would have to be removed from the store to play the tape, but that the court and opposing counsel were welcome to come to the scene and view it in situ. The court said it would do so. As noted, the court permitted several witnesses to describe what they saw on the tape.
After Ms. Smith rested her case, defense counsel orally moved for involuntary dismissal. The court said it had not yet viewed the videotape, and asked whether involuntary dismissal was proper before all evidence was introduced. After hearing arguments, the court ruled that regardless of what the tape showed, Ms. Smith had proved no right to relief on any of her three claims. The court granted judgment in favor of the defendants, dismissing Ms. Smith's suit. She has appealed, raising three assignments of error.

Discussion: False Imprisonment
By her first assignment, Ms. Smith urges the district court erred in involuntarily dismissing her claim of false imprisonment. She contends that the defendants locked the door to the place of employment, thus impeding the unrestrained movement of the employees; they then took her into the office, and ultimately to the police station, for questioning. She concedes that an employee's subjective feelings of restraint are not actionable, Kelly v. West Cash & Carry Bldg. Materials, 99-0102 (La.App. 4 Cir. 10/20/99), 745 So.2d 743, but argues that she was objectively restrained when Knight locked the door.
The defendants contend that questioning a store employee regarding missing items does not constitute false imprisonment. Kelly v. West Cash & Carry, supra. They concede that Knight locked the door, but submit that this action was reasonable and did not totally restrain Ms. Smith. They also contend that the officers' decision to take Ms. Smith to the station for questioning cannot be charged to the citizen who initiated the complaint. Hughes v. Gulf International, 91-0495 (La.App. 4 Cir. 1/16/92), 593 So.2d 776, writ denied, 92-0466 (La.4/3/92), 595 So.2d 658.
As it pertains to this case, involuntary dismissal is defined in La. C.C.P. art. 1672 B:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not *835 granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
Upon a motion for involuntary dismissal in a bench trial, the judge must evaluate all the evidence, without any special inferences in favor of the opponent of the motion, and grant the dismissal if the plaintiff has not established proof by a preponderance of the evidence. Crowell v. City of Alexandria, 558 So.2d 216 (La.1990); Furlough v. Union Pacific R. Co., 33,658 (La.App. 2 Cir. 8/31/00), 766 So.2d 751, writ denied, 2000-2929 (La.1/12/01), 781 So.2d 556. The appellate court will not reverse an involuntary dismissal based on Art. 1672 B in the absence of manifest error. Cupples v. Pruitt, 32,786 (La.App. 2 Cir. 3/1/00), 754 So.2d 328, writ denied, XXXX-XXXX (La.5/26/00), 762 So.2d 1108. The trial court has great discretion in the granting of an involuntary dismissal. Furlough v. Union Pacific R. Co., supra.
False imprisonment is the unlawful and total restraint of the liberty of the person. Kelly v. West Cash & Carry, supra. Submission to the mere verbal directions of the employer, unaccompanied by force or threats, does not constitute false imprisonment. Id. There is no false imprisonment where an employer declines to terminate an interview of his employee if no force or threat of force is used. Id.
In one factual respect, the instant case differs from several other reported cases involving employers who questioned employees about missing money or merchandise. In Kelly v. West Cash & Carry, supra, Harrison v. Phillips, 539 So.2d 911 (La.App. 4 Cir.), writ denied, 541 So.2d 894 (1989), and Rougeau v. Firestone Tire & Rubber Co., 274 So.2d 454 (La.App. 3 Cir.1973), the plaintiffs failed to prove they were actually restrained during the interrogation. Citing this fact, the courts rejected these claims of false imprisonment. By contrast, it is undisputed that Knight locked the door as soon as he learned the money was missing.
Nonetheless, all these cases affirm the employer's right to take reasonable steps to question employees about missing assets and reasonably investigate. The court found nothing unreasonable about the 30-minute interview in Rougeau or the three-hour interrogation in Kelly. The district court found that Ms. Smith and two other employees were detained about 10 minutes after Knight learned that money was missing from an area to which employees had access. The court found this detention was not unlawful because it was reasonable. Kelly v. West Cash & Carry, supra. We perceive no manifest error in that conclusion. Cupples v. Pruitt, supra. Ms. Smith's first assignment of error lacks merit.

Defamation
By her third assignment of error, Ms. Smith urges the district court erred in involuntarily dismissing her claim when the evidence of record established her right to recovery for damage to reputation, i.e., defamation. She recites the five essential elements of defamation set out in Cangelosi v. Schwegmann Bros. Giant Super Markets, 390 So.2d 196 (La.1980). She also shows that words which expressly or implicitly accuse another of criminal conduct, or which by their nature tend to injure one's personal or professional reputation, are defamatory per se. Steed v. St. Paul's United Methodist Church, 31,521 (La.App. 2 Cir. 2/24/99), 728 So.2d 931, writ denied, 99-0877 (La.5/7/99), 740 So.2d 1290. Ms. Smith contends that she proved *836 defamation by the testimony of Ms. Knight, who admitted telling a customer that Ms. Smith was being questioned about money missing from the safe.
The defendants urge that Ms. Smith did not plead defamation, but only "negligent, erroneous allegations," which the district court properly dismissed as a cause of action not recognized in Louisiana law. Even if defamation was properly before the court, the defendants contend that Ms. Knight told the customer only that Ms. Smith was being questioned about the missing money, and not that she was a suspect.
The district court correctly found there is no cause of action of "negligent, erroneous allegations." Although the petition is inartfully worded, the court is required to look through the petition's caption, style and form to determine its substance and do substantial justice for the parties. La. C.C.P. art. 865; Smith v. Cajun Insulation Inc., 392 So.2d 398 (La.1980); Steed v. St. Paul's United Methodist Church, supra. The thrust of Ms. Smith's claim was defamation.
The supreme court has recently held that four essential elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another, (2) an unprivileged publication to a third party, (3) fault (or negligence) on the part of the publisher, and (4) resulting injury. Costello v. Hardy, XXXX-XXXX (La.1/21/04), 864 So.2d 129. If even one of the required elements is lacking, the cause of action fails. Id.; Douglas v. Thomas, 31,470 (La.App. 2 Cir. 2/24/99), 728 So.2d 560, writ denied, 99-0835 (La.5/14/99), 741 So.2d 661.
The produce manager, Ms. Knight, admitted telling a customer that "they were questioning Nachole, talking to her about money that had been in the safe." Fairly read, this statement only means Ms. Smith, and her coworkers, were cooperating in the investigation. It did not accuse her of taking the money and is thus not defamatory per se. Ms. Knight also admitted telling the customer, "Nachole had been the only person that had been in the office since Bobbie left the office." This assertion was affirmed by every witness; on this record, it is true and not defamatory. Costello v. Hardy, supra; Thompson v. Lee, 38,930 (La.App. 2 Cir. 10/27/04), 888 So.2d 300, writ denied, 2004-2936 (La.2/4/05), 893 So.2d 873.
In short, the evidence does not show that Ms. Hunt or anyone in her employ made any false or defamatory statement about Ms. Smith. The district court was not plainly wrong to dismiss this portion of her claim.

Timeliness of Motion
By her second assignment of error, Ms. Smith urges the district court erred in granting involuntary dismissal before all the evidence had been introduced. The court had stated that the tape's contents "appear to be at the heart of the matter," and she contends that she relied on this. She argues that the defendant can move for involuntary dismissal at the close of the plaintiff's case or at the close of all evidence, but not at points in between. Gagliano v. Amax Metals Recovery Inc., 96-1751 (La.App. 4 Cir. 5/7/97), 693 So.2d 889, writ denied, 97-1738 (La.10/31/97), 703 So.2d 619. She contends she was prejudiced because trial was over three years after the incident, and witnesses who saw the tape had to testify from recollection.
The defendants respond that the district court acted within its discretion in ruling that the tape was irrelevant to the motion. They contend that everyone agreed the tape showed Ms. Smith had not been subject to any detention, and thus it had no bearing on her claim of false imprisonment.
*837 The code authorizes the motion for involuntary dismissal "after the plaintiff has completed the presentation of his evidence." La. C.C.P. art. 1672 B. The jurisprudence also permits the motion to be raised at the close of all evidence. Taylor v. Tommie's Gaming, 2004-2254 (La.5/24/05), 902 So.2d 380, and the authorities therein. Taylor declares that before the court may validly entertain the motion for involuntary dismissal, the plaintiff must have presented her entire case. Other cases explain that a plaintiff who allows the defendant to call witnesses out of order should not be penalized by an involuntary dismissal before she has rested her case. Gagliano v. Amax Metals Recovery, supra; Melady v. Wendy's of New Orleans Inc., 95-913 (La.App. 5 Cir. 4/16/96), 673 So.2d 1094, writ denied, 96-1249 (La.6/21/96), 675 So.2d 1088; Blanchard v. Our Lady of the Lake Med. Center, 529 So.2d 1309 (La.App. 1 Cir.), writ denied, 532 So.2d 772 (La.1988).
In the instant case, Ms. Smith expressly rested her case without putting on the video. Because she had finished presenting her evidence, the motion was timely. Taylor v. Tommie's Gaming, supra. The defendants called no witnesses out of order; in fact, they declined to cross examine Ms. Smith's witnesses until she rested her case. The motion for involuntary dismissal was timely and we perceive no manifest error in the court's ruling. Cupples v. Pruitt, supra. This assignment of error lacks merit.

Conclusion
For the reasons expressed, the judgment is affirmed. Trial and appellate costs are to be paid by Ms. Smith in accordance with La. C.C.P. art. 5188.
AFFIRMED.
NOTES
[1] An amended petition named R & B Trak's general liability insurer, American Central Insurance Company, as defendant, but the insurer obtained a summary judgment which has not been contested on appeal.