HOLDRIDGE, J.,
dissenting.
. hi respectfully dissent from the .per cu-riam opinion allowing the trial court’s judgment to stand. The trial court’s ruling, which effectively permits a creditor of Mrs. Burger’s husband to seize her separate property, was clearly erroneous and without basis in the law or jurisprudence. Like the trial court, this court now fails to properly interpret and apply La. C.C. art. 2329 to the facts of this case.[1] This error is compounded by the concurring opinion’s conclusion that the prior judicial finding regarding the Burgers’ separation of property agreement is an absolute nullity. Paradoxically, the combination of these errors results in a judgment that ultimately hurts the very spouse everyone agrees La. C.C. art. 2329 was intended to protect.
There is no dispute that the Burgers’ matrimonial agreement meets the form requirements of La. C.C. 'art. 2331. Nor is there any dispute that the Burgers obtained the necessary judicial finding required by La. C.C. art. 2329. ■ The sole issue herein pertains to the sufficiency of the pleading utilized to obtain that finding.
Specifically, La. C.C. art. 2329 allows spouses to enter into a matrimonial agreement terminating the legal regime “only upon joint petition and a finding by the court that this serves their best interests and that they understand the governing laprinciples' and rules.” While purporting to strictly construe this article, the concurring opinions conclude, at least implicitly, that a judicial finding rendered pursuant to La. C.C. art. 2329 is valid if, and only if, both spouses initiated the action by filing a joint written petition. However, strict construction of Article 2329’s text does not compel such a conclusion.[2] On *94 the contrary, the concurring opinions implicitly adopt prior jurisprudential gloss that Article 2329 mandates an initial joint “filing,”[3] and expand upon it to essentially add to the article an unwaivable and un-curable pléading requirement, that further precludes a. spouse from voluntarily acquiescing in any subsequently rendered judgment or order. This unduly expansive yet simultaneously' procedurally-rigid interpretation is both unreasonable and unwarranted.
Other' than the requirement that it be “joint,” no other provisions regarding the petition are provided for in Article 2329. For example, Article 2329 does not require either spouse to sign the petition or verify the petition, nor does it require that any particular allegations' be pled or that a copy of the spouses’ proposed matrimonial agreement be attached. Indeed, in enact-mg Article 2329, the legislature failed to even provide a venue for filing the petition. Arguably, given the enormous void, the general provisions of the code of civil procedure were intended to apply to the required petition.[4]
IsPursuant to one such provision, La. C.G.P. art. 926, any objections regarding the sufficiency of the petition, in terms of either its form or substance, or to a party’s prQcedural capacity, are waived unless timely raised in a dilatory exception.[5] See also La. C.C.P. art. 2693. Yet another provision, La. C.C.P. art. .1154, provides that a petition may be expanded to conform to the evidence' and/or admissions and stipulations made by the parties in the trial court. In fact, a petition may be amended accordingly even after judgment hás been rendered, although there is no requirement to do so.[6] Notwithstanding *95 these provisions, it is well-settled that a party may confess judgment in the proceedings in the trial court or may voluntarily and unconditionally acquiesce in a judgment that has been rendered. .See La. C.C.P. art 2085. They may even acquiesce in an absolutely null judgment. La. G.C.P. arts.2003. Therefore; in light of the foregoing, I believe the concurring opinions err in implicitly finding that 'toy deficiencies in the initial petition cannot be waived'or cured by the spouses’ consent, or that the spouses may not voluntarily acquiesce in the resulting judgment or order evidencing the required judicial finding.
Indeed, a ‘rigid’ interpretation- conflicts with the obvious ‘flexibility’ inherent in Article 2329. In addition to the dearth of provisions regarding the petition previously noted, the article provides no procedural instruction as to how the trial "court should áscertain the best interests of the parties or their knowledge of governing principles and rules. Article 2329 does not require the trial court to hold 14a hearing, nor does it require that the spouses even appear before the judge. There is no requirement in Article 2329 that the spouses be represented by separate counsel or by any counsel. Article 2329 makes no mention regarding proof or whether the spouses must execute the matrimonial agreement before or after obtaining the required judicial finding. In fact, the article does-not specify any particular form for the order or judgment memorializing that finding. “Indeed, the dispositive event is not the court’s order or judgment. At bottom is the contract of the parties. That contract is the juridical act that changes the regime. The court’s finding simply supplies the formality that allows the contract to produce its effects.” Lee Hargrave, Matrimonial Regimes, 54 La. L.Rev. 733, 741-42 (1994). See also La. C.C. art. 2329, In Matter of Boyer, 616 So.2d 730, 733 (La.App. 1 Cir.), writ denied 620 So.2d 882 (La.1993); Benedetto v. Benedetto, 15-373 (La.App. 5 Cir. 12/9/15), 182 So.3d 344; Andrea Carroll & Richard D. Moreno, 16 Louisiana Civil Law Treatise, Matrimonial Regimes § 8.6 (4th edl).
Regardless of the purpose for requiring a-joint petition, it must be remembered that a pleading, including the petition required- by Article 2329, is not an end, in and of itself, but is merely the means to an end, that being to implement the substantive law. La. C.C.P. art. 865, comment (a); Teachers’ Retirement System v. Louisiana State Employees’ Retirement System, 456 So.2d 594, 596 (La.1984). In other words: “Pleading is the ‘handmaid rather than the ihistress’ of justice.” Erath Sugarr Company v. Broussard, 240 La. 949, 125 So.2d 776, 777 (1961). Consequently, every pleading must be construed to arrive at the truth and do substantial justice for the parties, i.e. the Burgers.[7] La. C.C.P. art. 865; Smith v. Knight, 39,781 (La.App. 2 Cir. 6/29/05), 907 So.2d 831, 836.
|fiIn this case, justice-precludes a finding that the Burgers’ undisputed' agreement expressed to the trial judge in open court and in their actual matrimonial agreement {& copy of which was attached to, and incorporated in, the petition), as well as the trial court’s subsequent Article 2329 judicial finding, are utterly meaningless simply because the initial written petition did not name both spouses as petitioners. This is particularly so/when neither spouse was prejudiced, and any objections or deficiencies were obviously and voluntarily waived, cured, or acquiesced in.
*96 As this court stated in Matter of Boyer, 616 So.2d 730, 732 (La.App. 1 Cir.1993) writ denied, 620 So.2d 882 (La.1993), to comply with La. C.C. art. 2329, the trial court “must be satisfied that the spouses both agree to the change, that the spouses understand the rules and principles underlying a change in the matrimonial regime, and that the agreement appears to serve the best interest of the spouses.”
In this case, the spouses, represented by separate counsel, appeared at a hearing and indicated their agreement to terminate the legal regime and establish a separation of property regime in accordance with their joint matrimonial agreement. After questioning both spouses, the trial court approved their agreement, expressly finding that they understood the governing rules and principles - and that it served their best interests. Hence, the requisites of La. C.C. art. 2329 were arguably satisfied. In fact, in initiating a hearing and having separate representation, the Burgers actually exceeded the requirements of Article 2329.[8]
II. ABSOLUTELY OR RELATIVE NULLITY
Even if one could argue that the Burgers failed to satisfy Article 2329’s requirement of a joint petition, that failure would not render the subsequent judicial | ¿finding an absolute nullity.[9] At most, it would be a relative nullity.[10] . Consequently, the trial court’s erroneous finding of. an absolute nullity is the gravamen for reversal in this case. ...
Absolute nullities are so called because their effect is absolute and they operate similarly with respect to all members of society, not just the parties to the transaction. The purpose of this effect is obvious; because an absolute nullity is one that violates a rule of public order, it should have no effect with respect to anyone. Ronald J. Scalise Jr., Rethinking the Doctrine of Nullity, 74 La. L.Rev. 663, 671-72 (2014). Relative nullities, on the other hand, exist for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made. These nullities are relative in the sense that their effects are relative only to the.members of the transaction and, even more specifically, only relative to the person in whose interest it is designed to protect. Id. For instance, La. C.C. art.1919 was enacted to protect unemancipated minors and interdicts from entering into contracts. This law was not established for reasons of public policy, but for the protection of minors and interdicts. Consequently, a contract in violation of La. C.C. art.1919 is a relative nullity. See also La. C.C. art. 2031. Moreover, it can only be rescinded at the request of the minor or interdict or their legal representative.
Similarly, in this case, it is undisputed that the purpose of La. C.C. art. 2329 is to *97 protect a less worldly, economically vulnerable spouse from entering .into a potentially disadvantageous agreement with an overreaching spouse. See Matter of Boyer, 616 So.2d 730, 732 (La.App. 1 Cir.), writ denied, 620 So.2d 882 (La.1993). Thus, Article 2329 is clearly a “rule for the protection of private parties” and no^.a “rule of public order.” See La. C.C. arts. 2030 and 203Í. As such, any violation of it is only a relative nullity. Consequently, only the spouse it was intended to protect can invoke its nullity, or, alternatively, confirm it.[11]
This conclusion is in accord with prior jurisprudence of this court. See Williams v. Williams, 2006-0358 (La.App. 1 Cir. 2/9/07) (unpublished); Clay v. Clay, 358 So.2d 649, 651 (La.App. 1 Cir.1978). See also dictum in Matter of Boyer, 616 So.2d 730, 733 (La.Ct.App.1993) writ denied, 620 So.2d 882 (La.1993).[12]
It is also in accord with analogous codal provisions. For example, pursuant to La. C.C. art. 230 and La/C.C.P. art. 4501,[13] in certain circumstances, parents wishing to: alienate, encumber, or lease the property of their minor child; compromise a claim of the child; or incur an obligation of the minor child, must first jointly petition for court approval. Comment (a) to La. C.C. art. 230 provides that the procedure for obtaining prior court approval is intended to protect the minor child, and further states that the if the parents fail to obtain the required court approval for a transaction, that transaction is relatively null. (Emphasis added.)
Similarly, La. C.C. art. 2353 provides:
When the concurrence of the spouses is required by law, thé alienation, encumbrance, or lease of community property by a spouse is relatively null unless the other spouse has renounced the right to concur. Also, the alienation,' encumbrance, or lease of the assets of a community enterprise by the non-manager spouse is a relative nullity.
| «Thus, if a spouse alienates a substantial portion of the community property without the required agreement of the other spouse, the transaction is-only relatively null. If that is so, it can hardly be argued that, despite both spouses 'agreeing to terminate the community property regime and a court judicially approving that ' agreement, the mere failure to name both spouses as petitioners in the initial petition unequivocally results in an absolutely nullity. .
Despite acknowledging that the purpose of La. C.C. art. 2329 is to protect a less worldly spousé from entering into a disadvantageous agreement (i.e. to protect a private party to a transaction), the concurring opinion nonetheless goes on to conclude: “Clearly the strict requirements for opting out- of the. community property regime after marriage were meant to protect a larger class of persons and institutions *98 as opposed to merely regulating individual contractual rights.”
However, a conclusion that Article 2329 was intended to protect anyone other than the spouses entering into the agreement is simply not supported by either the language or the legislative history of La. C.C. art. 2329. Indeed, the plain, unambiguous language of Article 2329 makes clear that the required judicial finding is concerned exclusively with the spouses’ “best interests” and understanding of the governing rules. Likewise, the legislative history confirms that the required judicial finding was intended to serve as procedural safeguard to protect an economically vulnerable spouse against overreaching by the other spouse. In -Katherine S. Spaht and Cynthia-Samuel, Equal Management Revisited: 1979 Legislative Modifications! of the 1978 Matrimonial Regimes Law, 40 La. L.-Rev. 83, 91-92 (1979),[14] the basis of requirement was explained as follows:
The motion [to add the requirement of a judicial finding to Article 2329] made clear that the concern in allowing spous- . es to enter into matrimonial agreements was solely for the welfare of the spouse Inwhose contributions to the marriage were largely non-economic, and not for . the interest of creditors or forced heirs. [Emphasis added.]
Clearly, there is no public policy reason for La-. C.C. art. 2329 to' afford protection to groups such as forced heirs or creditors because they are already protected in other areas of the law. See Id. at 97-98. For example, creditors have available to them the same remedies they have against any contract of the debtor, in particular the revocatory action, an action for the declaration of simulation, and the oblique action. Id. at 98.
To further illustrate the fact that Article 2329’s requirements were not enacted for the benefit of creditors, such as Radcliffe, it should be noted that the legislation enacting La. C.C. art. 2329 also enacted La. C.C. art. 2376, which is a specific provision addressing the rights of creditors. Article 2376 only allows creditors to intervene in a proceeding to modify a regime to “object” that the action is in “fraud of their rights.” See Pan Am. Imp. Co., Inc. v. Buck, 452 So.2d 1167, 1170 (La.1984) (holding that, under La. C.C. art. 2376, a creditor had no right to object because the separation of property was not done “in fraud” of the creditor’s rights). Article 2376 further provides that creditors have one year to sue to annul a “judgment of separation of property.” Whether this right to annul a “judgment of separation of property” applies to the judicial “finding” required by Article 2329 as well as a “judgment decreeing separation of property” rendered under La. C.C. art. 2374 could be debated. Nevertheless, after a judgment has been executed, a creditor may only sue to annul the judgment to the extent it has been “prejudiced.” Thus, in La. C.C. art. 2376, the legislature expressly limited creditors from interfering in such spousal actions unless they can demonstrate “fraud” or “prejudice.” Since the legislature has provided a' specific provision pertaining to creditors, there is no plausible public policy reason 'to' extend the ambit of Article 1102329 to encompass them. Nor is there a basis for extending it to any other groups or institutions beyond the spouses themselves.
Further mitigating against a finding that La, C.C. art. 2329 is a rule of public order are the notable exceptions to; its *99 rule.[15] See 16 La. Civ. L. Treatise, Matrimonial Regimes § 8:6 (4th ed.) (“A coherent rationale for the' requirement [in La. C.C. art. ’2329] is difficult to find, especially considering the exceptions.”)’. The exceptions, particularly-when combined with the previously noted lack of implementing procedures provided by the. .legislature for Article 2329, belie a finding that Article 2329’s import is a matter of public order.
Finally, it is of no small significance that La. C.C. art. 2329 lacks any express legislative directive or commentary stating that a violation of. its provisions.results in,an absolute nullity. Such statements' are plainly provided for in other articles, such as those pertaining to the required formalities for donations or testaments. See e.g. La. C.C. arts. 1541 and 1573. (Examples of other such provisions, just within the Civil Code, include: La.’ C.C. arts. 94, 213, 1751, 3140, and 3174.) Indéed, commentators from as long ago as 1982 to as recently as 2015 have questioned whether Article 2329 is even’mandatory, given the lack of an express legislative directive.[16] Clearly, La. C.C. art. 2329’s enacting legislation made such expressions. with regard to some of its other provisions, but failed to do so for Article 2329. See 1979 La. Acts No. 709, § 1, eff. Jan. 1, 1980; La. C.C. art. In2330, comment (d) (expressly noting that its provisions are a matter of “strong p’ublic policy”); and La. C.C. art. 2337, comment (b) (noting that failure to comply with the article results in an absolute nullity). Even subsequently enacted matrimonial regime articles include' such express directives within their- text. See- La. C.C. art. 2369.8. Yet, with respect to La. C.C. art. 2329, the legislature declined to make such an expression.
Thus, for this and all of the reasons previously noted, I believe the concurring opinion errs in finding that La. C.C. art. 2329 is a rule of public order, the violation of which results in an absolute . nullity.
III. OTHER GROUNDS
• Although the per curiam maintains the trial court judgment declaring the prior judicial finding approving the Burgers’ matrimonial agreement to be an absolute nullity, it should be made clear that the trial court judgment merely allows Radcliffe to cancel - the prior judicial 'finding from the public records. It does not permit Radcliffe to cancel the Burgers’ agreement from the public record.
*100 Significantly, the Burgers’ agreement also effected an extrajudicial partition of community property. Spouses are permitted to voluntarily partition property without terminating their regime. See La. C.C. arts. 2336 and 2341. Specifically, La. C.C. art. 2336, provides, in pertinent part:
[Sjpouses may, without court approval, voluntarily partition the community property in whole or in part. In such a case, the things that each spouse acquires are separate property. The partition is effective toward third persons when filed for registry in the manner provided- by Article 2332. [Emphasis added.]
The Burgers’ partition of community property did not require court approval and thus, any failure to satisfy the requisites of La. C.C. art. 2329 has no bearing on the validity of the partition. Moreover, the Burgers were entitled to record their partition in accordance. with La. C.C. art. 2332.
1-ipThe mere fact that the partition was incorporated into the agreement to terminate the legal regime does not affect its validity.[17] See 16 La. Civ. L. Treatise, Matrimonial Regimes § 8:12 (4th ed.). Thus, even if the Burgers had two objectives in their agreement — to terminate the regime, as well as partition existing assets — a holding that the agreément did not terminate the community (i.e. did not impact future property) should not upset that part of the agreement effectuating the par-. tition of existing assets. See La. C.C. art. 2034. See also Id. Moreover, because the community regime was not terminated, it would appear that the community assets that were partitioned and became Mrs. Burger’s separate property as a result may not be available to satisfy Mr. Burger’s debts. See La. C.C. art. 2346 and La. C.C. art. 2357 (which, by its terms, is only applicable “after termination of the regime”). See also 16 La. Civ. L. Treatise, Matrimonial Regimes § 8:12 (4th ed.).
Lastly, I do not believe that Radcliffe was entitled to judgment in its favor with respect to its revocatory action or a comparable claim under La. C.C. art. 2376. In addressing the necessary showing for a revocatory action, this court, in Parish National Bank v. Wilks, 2004-1439 (La.App. 1 Or. 8/3/05), 923 So.2d 8, 15-16, stated:
In accordance with the dear language of La. C.C. art. 2036, in order for an obli-gee to annul an act of the obligor, he must show (1) an act (or failure to act) of the obligor that causes or increases the obligor’s insolvency; and (2) the act must occur after the obligee’s rights arose. .Additionally, the jurisprudence requires that the obligee must prove prejudice, injury, or damage to the obli-gee as a result of the act. The.test for determining prejudice or injury is factual, based on the value of the property and the ranking of the indebtedness. If preferred claims against the property exceed its value, the [act] should not be revoked because it does not, injuré or prejudice an unsecured creditor. [Internal citations omitted.]
1 tsHence, not every act or contract of the debtor which diminishes his estate prejudices the creditor. See Spaht and Samuel, *101 Equal Management Revisited: 1979- Legislative Modifications of the 1978 Matrimonial Regimes Lato, 40 La L. Rev 83, 99 (1979). Moreover, if an obligee establishes his right to annul his obligor’s act, that act shall be annulled only to the extent that it affects the obligee’s right. La. C.C. art. 2043. Similarly, under La. C.C. art. 2376, upon execution of the judgment approving the modification or termination of a regime, a creditor is only entitled to assert the nullity of that judgment to the extent that it was prejudiced.
As the plaintiff in this matter, Radcliffe bore the burden of presenting sufficient evidence in the trial court to establish its claims by a preponderance of the evidence; however, it failed to do so. Remanding this matter to the trial court to allow Radcliffe a “second bite of the apple” in meeting its burden of proof, when it clearly failed to do so the first time, would be inherently unfair and an unnecessary waste of judicial time and resources. Therefore, for this reason, and for all the reasons set forth herein, I believe the trial court’s judgment should be reversed and Radcliffe’s claims dismissed with prejudice.

. A finding that the requisites of La. C.C. art. 2329 .were satisfied in this' matter is necessarily rooted in the specific facts and circumstances of this case.

. Indeed, La. C.C. art. 2329 expressly provides that spouses may enter into an agreement to terminate a regime "upon joint petition," not “upon the filing of a joint written petition.” Article 2329 neither defines nor elaborates on the term “joint petition.” Consequently, a feasible argument could be made that the Burgers jointly ‘petitioned’ (i.e. requested) the court to render the necessary finding by virtue of their collaborative representations and request for approval of their agreement at the hearing. See La, C.C. art. 1853 and La. C.C.P. art. 2085. (Responses by counsel or a party to questions posed by the court, as well stipulations by the parties in open court may constitute judicial admissions *94 or confessions, See Catalanotto v. Catalanotto, 2014-0708 (La.App. 1 Cir. 12/10/14), 168 So.Ad 463; Compensation Specialties, L.L.C. v. New England Mut. Life Ins. Co., 08-1549 (La.App. 1 Cir., 2/13/09), 6 So.3d 275, 281, writ denied, 09-575 (La.4/24/09), 7 So.3d 1200; Wilkerson v. Wilkerson, 42,324 (La.App. 2 Cir. 8/15/07), 962 So.2d 1137, 1142). Nevertheless, construing the term "petition” in Article 2329 more narrowly,to be a written petition as provided for in the Louisiana Code of Civil Procedure, the concurring opinions still fail to strictly construe and apply La. C.C. art, 2329;

. See Stogner v. Stogner, 98-3044 (La.7/7/99), 739 So.2d 762, 769, (where Supreme Court found that appellate courts had improperly added the word "substantial” to the .pertinent statutory language' and that this "jurisprudential gloss” unduly heightened the burden of proof).

.. In this respect, it should be noted, that La. C.C. art. 2329 differs significantly from other statutory and codal provisions which mandate very precise, and detailed requirements that conflict with more general, provisions. See Trahan v. Coca Cola Bottling. Co. United, Inc., 2004-0100 (La.3/2/05), 894 So.2d 1096, 1104.

. Such objections are personal to the defendant. Frank L. Maraist, 1 Louisiana Civil Law Treatise, Civil Procedure § 6:6 (2d ed.) Therefore, had Radcliffe intervened , in the Burgers’ Article 2329 proceeding, see La. C.C. art. 2376, it would not have been entitled to raise an objection regarding the sufficiency of the petition. Rather interestingly, it has been able to successfully do so in the instant matter.

. In this case, Mrs, Burger did not object to the petition, and thus, any objections regarding the sufficiency of the petition were waived. More significantly,; the parties appeared at a hearing where they jointly sought the court’s approval of their agreement, and indicated their consent to the agreement, that ■ they understood the governing rules, and that it served their best, interests. Hence, any defect was waived or cured.
It is worthy of note that the petition filed by Mr. Burger, which incorporated the Burgers’ joint separation of ‘property agreement, see La. C.C.P, art. 853, clearly alleged that both spouses jointly desired and agreed to the separation of property agreement and further alleged that the agreement was in the interest of both spouses. As previously notedi there was no requirement for either spouse to sign or verify the petition.

. The pleading must be construed to do justice for the Burgers, who were the parties to the action. Indeed, it is difficult to conceive how Radcliffe, a non-party, could have been prejudiced by any technical deficiencies in the petition.

. The law does not prohibit their use of these additional safeguards. See Weinstein v. Weinstein, 2010-1083 (La.App. 3 Cir. 4/13/11) 62 So.3d 878, 884.

. Louisiana Civil Code art. 2030 provides:
A contract is absolutely null when it violates •a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed. Absolute nullity may be invoked by any person or may be declared by the court on its own initiative.

.Louisiana Civil Code art. 2031 provides:
A contract is relatively null when it violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made. A contract that is only relatively null may be confirmed. Relatively nullity may be invoked only by those persons for whose interest the ground for nullity was established, and may not be declared by the court on its own initiative.

. As expected, the jurisprudence concerning La. C.C. art. 2329 only reflects/nullity claims asserted on behalf of a spouse.. Apparently, there are no cases wherein it has been invoked by an unrelated, third party creditor.

. The case of Muller v. Muller, 10-540 (La.App. 5 Cir. 6/29/11), 72 So.3d 364, 368, which is factually and legally .distinguishable from the instant matter, is not controlling on this court and, in fact, conflicts with decisions rendered by this court. Significantly, the Muller court’s conclusion that a violation is La. C.C. art. 2329 is an absolute nullity is not traceable to any legislative directive. See Christopher Kirt Ulfers, Is A Postmarital Agreement in Your Best Interest? Why Louisiana Civil Code Article 2329 Should Let You Decide, 75 La. L.Rev. 1399, 1423 (2015).

. These provisions were only recently enacted; nevertheless, they do serve a useful analogy-

. In the article, the authors, who served as members of the legislative advisory committee regarding tiie legislation's enactment, detail their personal involvement.

. As a general matter, rules of public order are not tobe derogated from, La. C.C. art. 7. Yet, the not inconsiderable exceptions to La. C.C. art. 2329’s required judicial finding' include:’ premarital agreements; spouses who enter into a post-marital agreement within one year of acquiring domicile in Louisiana; spouses who enter into a post-marital agreement'for a-legal regime; spouses who elected to enter into an agreement during the enacting legislation’s transitional period, and spouses who file for divorce, but reconcile and, prior to reconciling, execute a matrimonial agreement rejecting their community regime. La. C.C. art. 2375(B). Thus, pursuant to La. C.C. art. 2375(B), spouses can potentially forego La. C.C. art, 2329's required judicial finding by filing for divorce and then adopting a separation of property regime (without court approval) before reconciling. Additionally, it has also been noted that other matrimonial regime provisions enacted by the legislature have the potential' of being used by an overreaching spouse to harm a less worldly spouse’s interest in the community; nevertheless, they too are exempt from any judicial oversight. See Spaht and Samuel, Equal Management Revisited: 1979 Legislative Modifications of the 1978 Matrimonial Regimes Law, 40 La L. Rev. 83, 92-93 (1979).

. See Laura Schofield Bailey, Marital Property Agreements-Being Creative with the New Legislation, 43 La. L.Rev. 159, 166-68 (1982); Christopher Kirt Ulfers, Is A Postmarital Agreement in Your Best Interest? Why Louisiana Civil Code Article 2329 Should Let You Decide, 75 La. L.Rev. 1399, 1422-423 (2015).

. See 16 La. Civ. L. Treatise, Matrimonial Regimes § 8:6 (4th ed.):
It may well be that the document establishing a matrimonial regime may also incorporate other provisions dealing with donations of existing property and partition of existing property. Those aspects, though, could be separate contracts not requiring judicial approval, and the inclusion of them in one document for convenience should not require those aspects of the agreement to be subject to the court’s finding of understanding and best interests.