440 So.2d 961 (1983)
Alice Faye Frazier CLOUD, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.
No. 83-198.
Court of Appeal of Louisiana, Third Circuit.
November 9, 1983.
Rehearing Denied December 5, 1983.
*962 Martin S. Sanders, III of Sanders & Castete, Winnfield, for plaintiff-appellant.
Lunn, Irion, Switzer & Salley, Julie Mobley Lafargue, Shreveport, Watson, Murchison, Crews, Arthur & Corkern, Ronald E. Corkern, Jr., Natchitoches, for defendant-appellee.
Before DOMENGEAUX, GUIDRY and CUTRER, JJ.
CUTRER, Judge.
Alice Faye Frazier Cloud sued Carson Cloud and his insurer, State Farm Mutual Automobile Insurance Company (State Farm), to recover damages allegedly sustained by Mrs. Cloud as a result of Mr. Cloud's negligent operation of an automobile.[1] The trial court granted defendant's motion for dismissal pursuant to LSA-C. C.P. art. 1810(B).[2] Mrs. Cloud appeals; we affirm.
Mrs. Cloud filed separate suits against Mr. Cloud and State Farm. At trial, and on appeal, these suits have been consolidated. Our statement of the facts and resolution of the issues presented on appeal in this, State Farm's, case are equally applicable to the suit against Mr. Cloud. However, a separate opinion will be issued today in Mr. Cloud's case. See, Cloud v. Cloud, 440 So.2d 965 (La.App. 3rd Cir.1983).

FACTS
The episode which resulted in Mrs. Cloud's injury was part of a long-running dispute between Mr. and Mrs. Cloud. The Clouds (Alice and Carson), in the summer of 1981, were involved in a custody dispute over their, then seven-year-old, daughter. According to Alice, on June 29, 1981, a custody hearing was scheduled. When Carson failed to appear with his daughter at that hearing, Alice went to Carson's residence demanding the child be turned over to her. A loud and heated argument, lasting several hours, took place. Alice finally left without the child.
The following day, at about 9:00 A.M., Alice returned to Carson's residence. Shortly after she arrived, Carson, with his daughter in tow, got into his Ford station wagon and attempted to leave. Alice armed herself with a loaded .22 caliber rifle and ordered Carson to stop his car. After the *963 car was stopped, and the motor was turned off, Alice mounted the hood. Alice and Carson remained in their respective positions, Carson behind the wheel and Alice on the hood, apparently content to wait each other out.
During the standoff Alice repeated her demands. Carson responded verbally but, because the windows in the car were closed, Alice says she could not hear him. Carson also displayed some papers through the window for Alice to see; Alice said she did not know what the papers were. After some time Alice pounded on the windshield of the car with the butt of her rifle. Her attempt to break the windshield was unsuccessful.
After Alice pounded on the windshield, and some thirty to forty minutes after she first climbed onto the hood of his car, Carson started the motor of his station wagon. Alice testified that she heard the motor start but she did not get off the car because she did not want Carson to leave with the child. Carson proceeded to drive around his yard; he sped up and braked intermittently trying to remove Alice from the car. Alice, now lying on the hood of the car with her rifle, was able to remain on the car by holding on to the windshield wipers.
Carson proceeded onto a public road with Alice and the rifle still on the car. After Carson traveled a short distance, he braked his car and, at that point, Alice's rifle fell from the car. Carson put his car into reverse and backed to a point in front of his residence where he stopped. Alice, now unarmed, attempted to dismount the car and, according to Alice, injured her right foot and ankle. Alice left Carson's residence, without the child, and sought medical attention.
Alice brought separate suits against Carson and his insurer, State Farm, to recover medical expenses, future medical expenses, pain, suffering and mental anguish, disability and permanent disfigurement. In a bench trial, after hearing all of Alice's evidence on liability (Mrs. Cloud's attorney having rested his case holding the record open for the receipt of a deposition from a treating physician), the judge below dismissed the suits pursuant to an 1810(B) motion by the defendant's counsel. Mrs. Cloud appeals. We affirm.

ISSUES
Mrs. Cloud's attorney has raised three issues on appeal:
(1) Whether the trial court erred in granting a dismissal after the plaintiff had presented his evidence as to liability but had not presented medical testimony as to quantum;
(2) Whether the trial court erred in finding that plaintiff had not proven that her injury was caused by the negligence of the driver of the station wagon; and
(3) Whether a defense of assumption of the risk was properly before the trial court.
We will discuss each of these issues, in the order presented, below.

WHETHER THE MOTION TO DISMISS WAS TIMELY CONSIDERED BY THE TRIAL COURT
Code of Civil Procedure article 1810(B) provides in pertinent part:

"In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party,... may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. ...." (Emphasis added.)
Plaintiff's attorney cites the emphasized word above and argues that the court below committed error when it entertained an 1810(B) motion after plaintiff's evidence had, by agreement of all counsel and the court, been held open for the later taking and filing of a deposition by a treating physician. Plaintiff cites a case from this circuit, Duplechin v. John Doe, Rimmer and Garret, Inc., 365 So.2d 53 (La.App. 3rd Cir. 1978), as support for the proposition that the trial judge could not grant a motion to dismiss when plaintiff had completed the liability portion of his evidence but had not yet presented testimony dealing with quantum. *964 Duplechin does not support this proposition.
In Duplechin this court stated the circumstances at the time the trial court considered the motion to dismiss as follows:
"The trial judge notes in the record that he ordered the plaintiff to proceed first with the liability portion of his evidence. At one point, after most of plaintiff's witnesses to the liability of the defendant had testified, the judge asked plaintiff if he had rested. The plaintiff stated that he had not yet presented the testimony of two witnesses whose evidence would only tangentially affect the issue of liability, and he had not yet presented his evidence as to quantum. Over plaintiff's protest, he was deemed to have rested his case, and the court allowed and granted the motion for a directed verdict."

In view of the fact that the trial court, in Duplechin, considered the motion to dismiss before the plaintiff had presented all his evidence pertaining to liability, this court correctly held "in the instant case, the plaintiff had not presented all of his evidence and should have been allowed to do so."[3]
The case at hand is distinguishable. In this case, the plaintiff had presented his entire case concerning liability. The case was held open for the deposition of a treating physician which testimony would not concern liability. We also note that plaintiff's counsel did not object to the trial court's consideration of the motion at this juncture of the case.
While the above discussion of Duplechin shows it is not support for the proposition advanced by Mrs. Cloud's attorney in this case, we are left with the clear wording of the statute referring to the "completion" of plaintiff's evidence. We find that the position espoused by the court in Smith v. Travelers Indem. Co. of Rhode Island, 374 So.2d 708 (La.App. 1st Cir.1979), which addressed the issue of whether a dismissal under 1810(B) was appropriate when all liability evidence, but not all quantum evidence, had been presented, is a correct interpretation of the scope and intent of C.C.P. art. 1810(B) in this situation.
In Smith, the trial judge dismissed plaintiff's suit as to the defendant police jury after the plaintiff's liability evidence was complete but before all of plaintiff's evidence as to quantum was presented. The First Circuit said:
"Plaintiffs argue that the trial judge was in error in dismissing the suit against the police jury prior to the presentation of all of plaintiffs' evidence. A close review of the record reveals that plaintiffs had rested subject to a proffer and medical testimony. Conceding arguendo that the proffered evidence was admissible, we find no fault on the part of the trial judge in dismissing the suit as against the police jury. We do not believe that the spirit or intent of La.C.C.P. art. 1810 B was violated by the dismissal of a suit on a question of liability where only medical evidence is missing."
The factual situation in the instant case is strikingly similar to that of Smith. The trial judge, after hearing the testimony of Alice and Carson about the occurrences of June 30, 1981, had before him all of the available evidence bearing on the liability of Carson and State Farm. Mrs. Cloud's attorney had rested his case subject to the inclusion in evidence of a deposition of a treating physician. After Mrs. Cloud's attorney rested, the defendant's counsel moved for a dismissal. In his motion for dismissal defendant's counsel characterized the remaining evidence as being only relative to quantum; Mrs. Cloud's attorney did not object to this characterization. It is *965 clear plaintiff had "completed" the presentation of her liability evidence.
Having all of the evidence relevant to liability before him, the trial judge appropriately considered defendant's motion. This assignment of error has no merit. The basis of the trial judge's decision of the motion for dismissal is the subject of plaintiff's second assignment of error.

LIABILITY OF CLOUD
The plaintiff contends that she sustained a foot and ankle injury as a result of the negligence of Cloud. The testimony pertaining to liability consisted of only that of the plaintiff. The husband was called on cross-examination but was asked only six questions seeking to establish that State Farm was his liability insurer and that he was the driver of the station wagon during the episode in question.
In his ruling on the motion for a dismissal, the trial judge agreed with the defense attorney's argument that plaintiff had assumed the risk. Also, the trial judge stated as follows:

"I might add also that a further reason for this is Mrs. CloudMrs. Frazier frankly could not say how she got injured. She failed to prove with that amount of proof necessary as required by Louisiana law exactly how she did get injured. I will include that as part of the reason for the granting of the motion....."
Plaintiff contends that she was injured after the station wagon was finally brought to a stop in front of Cloud's house. We note that she reiterated in detail the events occurring up to the time that the station wagon was finally stopped in front of the house. At that point, the testimony as to how she injured her foot becomes confusing, unclear and indefinite. She stated that, as the station wagon stopped, she started sliding off the front of the hood. She testified that, as she got off the hood, Cloud moved the vehicle forward injuring her foot. At another point, she stated that she did not slide completely off the hood in front as she was holding on to the windshield wipers. She stated that, after the stop, she slid partially off but then pulled back up on the hood and then rolled off the hood on the passenger side, falling into a ditch. She was unable to say what part of the car caused the injury. Her recollection of the facts surrounding the injury were vague and indefinite. Whether she was injured by some action of Carson is uncertain and speculative. The plaintiff's testimony is such that it cannot be determined whether she was injured by a negligent act of Carson or by some of her own actions during the escapade or upon leaving the hood of the vehicle after it was stopped.
The record supports the trial judge's conclusion that plaintiff had failed to prove how she was injured. We cannot say that the trial court was clearly wrong in this conclusion. The failure of plaintiff to prove that any negligence of Carson was a cause of the injury justifies the trial court's granting of the motion to dismiss.
Having come to this conclusion it is unnecessary that we address the defense of assumption of the risk.
For the reasons assigned, the ruling of the trial court is affirmed. All costs of this appeal are to be paid by Alice Faye Frazier Cloud, plaintiff-appellant.
AFFIRMED.
GUIDRY, J., concurs.
NOTES
[1] Prior to trial attorneys for Mr. Cloud filed a peremptory exception on behalf of their client. The exception alleged that, on the date of Mrs. Cloud's injury, she and Mr. Cloud were husband and wife and, as such, Mrs. Cloud had no "cause or right of action" against Mr. Cloud. It is clear that a cause of action exists in the factual circumstances described in Mrs. Cloud's petition; i.e., a remedy is provided by our law. However, if Mr. Cloud's allegation is true, Mrs. Cloud has no right of action in this case. See, LSA-R.S. 9:291 which lists the only instances in which spouses may sue one another; negligent injury is not one of the instances enumerated.

As to the exception of no right of action, when this matter came on for hearing, this exception was referred to the merits. The record fails to clearly address the marital status of the parties. Because of our resolution of the merits of this case in State Farm's appeal; i.e., affirming the trial court's dismissal of Mrs. Cloud's suit on the merits, it would be inefficient to remand this case for the taking of further evidence regarding this exception.
[2] The parties erroneously termed the motion a directed verdict. As the instant case involved a bench trial, the motion is correctly designated a motion for dismissal. LSA-C.C.P. art. 1810(B).
[3] We note that plaintiff also cites the case of Tilley v. Mount Vernon Ins. Co., 411 So.2d 72 (La.App. 3rd Cir.1982), as support for its proposition. Tilley dealt with whether a motion to dismiss could be urged by a defendant at the close of defendant's case. This court held that, since 1810 states such a motion may be made after the evidence presented by the non-moving party, it was appropriate for the court to consider such a motion both at the close of plaintiff's case and at the close of defendant's case prior to submission of the case to the jury. Tilley did not involve 1810(B).