902 So.2d 380 (2005)
Gregory M. TAYLOR
v.
TOMMIE'S GAMING and Bridgefield Insurance Company (and U.S. Specialty Insurance Company).
No. 2004-C-2254.
Supreme Court of Louisiana.
May 24, 2005.
Mark Kenneth Manno, for Applicant.
Eskridge E. Smith, Jr. Law Corporation, Eskridge E. Smith, Jr., Bossier City, *381 Linda Lea Smith, Daniel Steven Wanko, Jr., Slidell, for Respondent.
VICTORY, J.
This case arises from a disputed claim for workers' compensation benefits between the plaintiff and his employer. The Office of Workers' Compensation ("OWC"), District 1W, Elizabeth Warren presiding, found that plaintiff had committed fraud in violation of La. R.S. 23:1208 and granted defendants' motion for involuntary dismissal. The OWC also ordered plaintiff to pay $12,833.62 to Bridgefield Insurance Company ("Bridgefield") and $62,340.37 to U.S. Specialty Insurance Company ("U.S. Specialty") as restitution under La. R.S. 23:1208(D). After a review of the record and the applicable law, we reverse the judgments of the lower courts and hold that involuntary dismissal was improper under La. C.C.P. art. 1672 because plaintiff had not finished presenting his case at the time the motion was granted. In addition to the timing of the involuntary dismissal, plaintiff assigned as errors one defendant's being allowed to supplement the record with exhibits and the awards of restitution for litigation expenses and attorney fees. Because involuntary dismissal was improper, we find the remaining two assignments of error to be moot.

FACTS AND PROCEDURAL HISTORY
On November 9, 2000, Plaintiff-Applicant Gregory M. Taylor ("Taylor") was injured in an automobile accident in the course and scope of his employment with Tommie's Novelty and Gaming ("Tommie's"). Taylor herniated disks in his neck, requiring surgery performed by Dr. Marco Ramos. U.S. Specialty, as Tommie's workers' compensation insurer, paid Taylor medical and indemnity benefits in the amount of $40,432.14.
Taylor returned to work in May 2001. On September 14 of that year, Taylor claimed to suffer another injury at Tommie's when he was moving a pool table and pinball machine while in the course and scope of his employment. Taylor claimed that the second injury was actually a "re-injury" of the prior herniated disks from the November 9, 2000 automobile accident. At some point between Taylor's first and second alleged injuries, Bridgefield replaced U.S. Specialty as the workers' compensation insurer for Tommie's. Taylor filed a disputed claim for workers' compensation benefits arising from the September 14, 2001 accident and initially named only Bridgefield as the defendant. However, Taylor subsequently added U.S. Specialty as a defendant on the theory that the second injury was an aggravation of the first. Bridgefield paid medical expenses in the amount of $3,746.11 and disputed the remainder of the claim. U.S. Specialty refused to pay any benefits for the September 14 claim.
Bridgefield and U.S. Specialty filed reconventional demands against Taylor, alleging that he willingly made false statements in order to obtain workers' compensation benefits in violation of La. R.S. 23:1208 and that, therefore, Taylor forfeited all benefits and should be ordered to pay restitution for any benefits paid to him and any reasonable investigation and litigation costs, including attorney fees. Bridgefield also filed a cross-claim against U.S. Specialty claiming that, to the extent the September 2001 injury was a result of the November 2000 injury, U.S. Specialty was liable for medical and indemnity benefits and penalties and attorney fees.
Trial was held on this matter on April 15, 2003, at the OWC, District 1W. At the *382 close of Taylor's testimony but prior to the completion of his presentation of evidence, Defendants moved for and were granted an involuntary dismissal, despite objection by Taylor's counsel. The workers' compensation judge ("WCJ") found that Taylor had violated La. R.S. 23:1208 and thus owed Bridgefield and U.S. Specialty restitution, but Taylor did not owe a civil penalty or attorney fees. After a hearing to determine restitution, Taylor was ordered to pay Bridgefield $12,833.62 and to pay Specialty $62,340.37. Taylor filed a motion for new trial, which was denied.
Taylor appealed the decision, assigning as error the WCJ's grant of involuntary dismissal prior to the close of plaintiff's case in chief, the denial of plaintiff's motion for new trial, the denial of plaintiff's Exception of Vagueness, the denial of plaintiff's request to proffer exhibits, the ruling that Taylor violated La. R.S. 23:1208, the order to pay restitution, and the amount thereof. The court of appeal reversed the restitution award of $62,340.37 to U.S. Specialty, finding that the $40,432.14 in medical and indemnity benefits for the November 2000 injury had not been the result of fraud under La. R.S. 23:1208 and thus were not subject to restitution. Taylor v. Tommie's Gaming, 38,568 (La.App. 2 Cir. 6/25/04), 878 So.2d 853. The matter was remanded to the WCJ for determination of the proper amount of restitution and for a ruling on Tommie's and Bridgefield's claim against U.S. Specialty. In all other respects, the court of appeal affirmed the WCJ's ruling, with Judge Caraway dissenting as to the inclusion of attorney fees in restitution for reasonable costs of investigation and litigation.
We granted Taylor's writ application. Taylor v. Tommie's Gaming, 04-2254 (La.12/17/04), 888 So.2d 850.

DISCUSSION
The procedure for involuntary dismissal is governed by La. C.C.P. art. 1672(B), which provides as follows:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence. (emphasis added)
In the case sub judice, defendants moved for and were granted a motion for involuntary dismissal at the close of plaintiff's testimony but prior to the completion of the presentation of his case. Plaintiff intended to call another witness to corroborate his testimony regarding payments made by an employer for whom plaintiff allegedly worked after resigning from defendant, Tommie's.
Over objection by plaintiff's counsel, the WCJ granted the motion for involuntary dismissal because she determined that no conceivable evidence could be presented by plaintiff to alter the WCJ's finding that plaintiff had made willful fraudulent statements for the purpose of obtaining worker's compensation benefits in violation of La. R.S. 23:1208.[1] Relying on Gould v. *383 Gould, 28,996 (La.App. 2 Cir. 1/24/97), 687 So.2d 685, the court of appeal held that the involuntary dismissal was proper because no additional evidence would have altered the ruling.
While we recognize that the rules of evidence and procedure are relaxed in workers' compensation proceedings,[2] such proceedings are nonetheless lawsuits to be conducted in conformity with the accepted standards of practice and procedure. See Chapman v. Lalumia, 154 So.2d 93 (La.App. 4 Cir.1963) ("While the technical rules of evidence and procedure may be relaxed somewhat in a compensation case, such a case is nevertheless a lawsuit and the rules of practice prescribed by the Code of Civil Procedure and the jurisprudence may not be disregarded entirely.")
The clear wording of La. C.C.P. art. 1672(B) indicates that the plaintiff must have completed the presentation of his evidence prior to the granting of an involuntary dismissal, and the jurisprudence supports this interpretation. In Gagliano v. Amax Metals Recovery, Inc., 96-1751 (La.App. 4 Cir. 5/7/97), 693 So.2d 889, the defendant was allowed to put on two witnesses during the presentation of the plaintiff's case in chief and was granted an involuntary dismissal at the conclusion of the plaintiff's case. Citing Blanchard v. Our Lady of the Lake Medical Center,[3] 529 So.2d 1309 (La.App. 1 Cir.1988), writ denied, 532 So.2d 772 (La.1988), the court in Gagliano held that a motion for involuntary dismissal may be made either at the close of the plaintiff's case or at the close of all evidence but not at points in between. See also Melady v. Wendy's of New Orleans, Inc., 95-913 (La.App. 5 Cir. 4/16/96), 673 So.2d 1094. ("A motion for involuntary dismissal may be made at the close of plaintiff's case or at *384 the close of all the evidence. It may not be made at points in between.")
While a trial court has much discretion in determining whether to grant a motion for involuntary dismissal, the trial court is required to weigh and evaluate all evidence in order to make such a determination. Locke v. Sheriff, Parish of Jefferson, 94-652 (La.App. 5 Cir. 12/28/94), 694 So.2d 257.[4] In the case sub judice, the trial court could not have weighed all evidence since the plaintiff had not called all of his witnesses and had not yet rested his case. Thus, the trial court acted prematurely.
In Cloud v. State Farm Mutual Automobile Ins. Co., 440 So.2d 961 (La.App. 3 Cir.1983), the court of appeal upheld an involuntary dismissal by the trial court even though plaintiff had not presented all testimony related to his case. Since plaintiff had presented all evidence as to liability and had only medical evidence as to quantum remaining, involuntary dismissal was proper because quantum was irrelevant if defendant was not liable. In the case sub judice, the plaintiff's remaining witness intended to testify not as to quantum but as to whether or not plaintiff had worked since resigning from the defendant's employ, a charge directly related to plaintiff's claim for workers' compensation benefits. While the evidence not presented in Cloud related to an issue unrelated to the trial court's ruling on involuntary dismissal, the evidence in the matter currently before this Court related directly to the OWC's ruling on the legitimacy of plaintiff's claims. Thus, we find Cloud to be inapplicable to the current matter.
Finally, we find the court of appeal's reliance on Gould, supra, to be misplaced in the case sub judice. In Gould, one of the defendant's expert witnesses was allowed to testify out of order and during the plaintiff's presentation of his case-in-chief. At the close of the plaintiff's case, the defendant moved for and was granted an involuntary dismissal. The court of appeal held that it was not error to grant the involuntary dismissal because no additional evidence presented by the defendant was likely to alter the trial court's decision. However, two facts in Gould stand in stark contrast to the case now before us. First, the plaintiff in Gould was allowed to present his entire case whereas Taylor was not allowed to do so. Second, the plaintiff's counsel in Gould "virtually conceded" that no evidence presented by the defendant would have altered the district court's ruling. Taylor's counsel made no such concession, and in fact objected at the time the WCJ made her ruling on the involuntary dismissal. Hence, we find Gould inapplicable to the case before us and decline to follow the reasoning of the court of appeal on this matter.

CONCLUSION
The OWC's grant of defendants' motion for involuntary dismissal was premature under La. C.C.P. art. 1672(B). The clear language of the article itself and the jurisprudence interpreting the article dictate that the plaintiff be given the opportunity *385 to conclude the presentation of his case before a motion for involuntary dismissal may be heard. Taylor was not allowed to finish presenting his evidence; thus, the motion for involuntary dismissal was untimely.

DECREE
For the reasons expressed herein, the judgments of the lower courts are reversed. The matter is remanded to the OWC for plaintiff to present any remaining witnesses or other evidence and to conclude his case, then for the remaining parties to present such evidence as they choose.
REVERSED AND REMANDED.
CALOGERO, C.J., assigns additional concurring reasons.
CALOGERO, Chief Justice, assigns additional concurring reasons.
I agree with the majority's determination to remand the case to the Office of Workers' Compensation ("OWC") for the claimant to present the remainder of his case. I write separately, however, to point out that this case is only half concluded. Depending upon the manner in which the lower courts resolve the fraud issue on remand, we may yet have the opportunity to consider whether an award of "benefits made or payments obtained" under La.Rev.Stat. 23:1208(D) should properly include "reasonable costs of investigation and litigation," as the lower courts held.[1] Although the majority's resolution of the case has pretermitted consideration of this issue at present, I would note that it was perhaps the primary reason the court decided to grant the writ, and the court will likely have occasion to address the issue in the future, if not in this case then in another.
NOTES
[1] La. R.S. 23:1208 states, in pertinent part:

A. It shall be unlawful for any person, for the purposes of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
C. (4) Notwithstanding any provision of law to the contrary which defines "benefits claimed or payments obtained", for the purposes of Subsection C of this Section, the definition of "benefits claimed or payments obtained" shall include the cost or value of indemnity benefits, and the cost or value of health care, medical case management, vocational rehabilitation, transportation expense, and the reasonable costs of investigation and litigation.
D. In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties by the workers' compensation judge of not less than five hundred dollars nor more than five thousand dollars, and may be ordered to make restitution. Restitution may only be ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct.
[2] La. R.S. 23:1317 provides, in pertinent part:

If an answer has been filed within the delays allowed by law or granted by the workers' compensation judge, or if no judgment has been entered as provided in R.S. 23:1316 at the time for hearing or any adjournment thereof, the workers' compensation judge shall hear the evidence that may be presented by each party. Each party shall have the right to be present at any hearing or to appear through an attorney. The workers' compensation judge shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence and all compensation payments provided for in this Chapter shall mean and be defined to be for only such injuries as are proven by competent evidence, or for which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself. The workers' compensation judge shall decide the merits of the controversy as equitably, summarily, and simply as may be. (emphasis added)
[3] Although the issue in Blanchard dealt with the timing of a grant of a directed verdict under La. C.C.P. art. 1810 rather than an involuntary dismissal under La. C.C.P. art. 1672, the two provisions may be read as analogs, particularly since the language on involuntary dismissals was included in La. C.C.P. art. 1810 until 1983.
[4] Locke cited Mott v. Babin Motors, Inc., 451 So.2d 632 (La.App. 3 Cir.1984), in which the court held that it was not reversible error for the trial court to grant defendants' motion for dismissal. Plaintiffs had requested that the trial court visit the scene of the accident which formed the basis for trial, and then plaintiffs rested their case. The trial court granted the motion to dismiss without having visited the scene of the accident. However, Mott is easily distinguishable from the case sub judice in that the plaintiffs in Mott were allowed to call all of their witnesses and had actually rested their case prior to the trial court's ruling.
[1] In holding that an award of "benefits made or payments obtained" under La.Rev.Stat. 23:1208(D) could include "reasonable costs of investigation and litigation," the lower courts relied on Second Circuit's decision in Yarnell Ice Cream Co. v. Allen, 33,020 (La.App. 2 Cir. 5/10/00), 759 So.2d 1066, writ granted, 00-1520 (La.9/15/00), 767 So.2d 699, order recalled, 00-1520 (La.1/17/01), 777 So.2d 472. The dissenters from the recall of the writ in Yarnell urged the court to decide this issue, stating that it was "important and likely to arise again." 777 So.2d at 472 (Calogero, C.J., and Kimball, J., dissenting).