MOORE, J.
It Richard J. Heath appeals a judgment of involuntary dismissal that rejected his claims for declaratory judgment and general damages arising out of his ouster from a hunting club. The defendants have answered, seeking damages for frivolous appeal. We affirm.

Factual and Procedural Background

Crazy Cajun Hunting Club consists mainly of men from the Houma-Thibodaux area who like coming to central Louisiana to hunt deer. For a number of years, the club obtained annual hunting permits from Weyerhaeuser Company covering 667 acres (“the Crazy Cajun lease”) of the latter’s forestry land in Winn Parish.
The plaintiff, Richard Heath, is a resident of Rapides Parish. His wife’s family formerly owned, and his two children now actually own, a 22-acre tract (“the Sherman tract”) adjoining the Crazy Cajun lease. He testified that he uses the Sherman tract for hunting and to plant a garden, and that a private road accessing it traverses 75-100 feet over the Crazy Cajun lease. In June 2003, he paid Crazy Cajun’s $273 dues and joined the club, wanting access to the larger hunting area. He testified that in lieu of the 20-hour “duty time” assessed on club members, he allowed the club free use of his bush hog and disk on the food plots. Before the hunting season began, Heath put up two deer stands on the Crazy Cajun lease, close to the Sherman tract.
Unfortunately, friction arose between Heath and the other members of Crazy Cajun. Heath complained that the club posted the private road leading to the Sherman tract, making it difficult for him to reach his garden. |aHe also felt the club mistreated him by rebating $100 of dues to every other member but him. He testified that the club never published a financial statement, and he asked the club president, Carliss McCarthy Sr., to change the club’s bank account to require two signatures to write any check.
Heath testified he was totally shocked when he received a letter dated November 3, 2003, advising that he had been expelled from the club by a unanimous vote of the other members; he professed to be unaware that any meeting was scheduled for that day, or that terminating anybody was ever under consideration. Disregarding the letter, he went to his deer stand on November 29. However, McCarthy and Deputy Perry of the Winn Parish Sheriffs Office came and advised him he was trespassing. Heath offered no resistance, and spent four or five hours in jail until he could post bail. He claimed that this experience was humiliating and aggravated a preexisting psychiatric condition.
Heath filed this suit in January 2004. He named as defendants McCarthy, Rhal Martin (the club member who certified memberships), and Weyerhaeuser. He demanded a declaratory judgment that his termination from Crazy Cajun was null and without effect, together with general damages for his worsened mental state. He stipulated that his damages would not exceed $50,000, thus consenting to a bench trial.
The defendants answered that Heath had repeatedly violated club rules and had never been denied access to the Sherman tract. Further, it was Heath who called the meeting on November 3, 2003, for the purpose of evicting McCarthy and another member, but Heath failed to attend the | smeeting he himself called; the members in attendance unanimously voted to terminate Heath, and notified him of this by letter.

Trial Evidence

Because the issue on appeal is the propriety of the involuntary dismissal, we will *366 relate the trial evidence in the sequence it was presented.
Heath first called McCarthy as an adverse witness. McCarthy testified that Heath had violated several of the club’s bylaws, including failure to pay guest fees, failure to mark his location on the hunting board, using foul language around other members’ wives and children, and drinking in his deer stand. He maintained that Heath did in fact receive the $100 dues rebate, and although the club “posted” the private road, they never blocked Heath from using it. Most offensively, Heath got into an argument and used profanity, threatening to “whip” several club members and burn down their stands. Finally, McCarthy admitted that the notice of meeting did not state that expelling members would be on the agenda, but Heath “knew about” the meeting.
Deputy Perry then testified that he took Heath to jail on November 29, 2003, but that Heath had received a verbal warning to vacate five days earlier.
Heath then took the stand, testifying largely as outlined above. He admitted he had never marked the hunting board because no pen was provided; he never paid guest fees because he was unsure how much these were; he “probably” used foul language in front of women and children, and he “probably” called the other members “dumb coonasses,” but he denied Uthat he ever threatened anybody. He admitted drinking in his deer stand, but not when he was hunting, just reading a newspaper. He denied that he tried to get Weyerhaeuser to expel any members, but admitted inquiring about this only to learn that the lessor would not interfere in club operations. He felt the real reason for the rift was that he had recently fired McCarthy from his cable company and taken away his company truck.
Finally, Heath’s brother and wife testified about his mental distress. After calling these five witnesses, Heath rested his case.
The defendants then moved for “directed verdict.”[1] The district court denied the motion but stated, “If during the presentation of the evidence by the defense I find that there is not a preponderance of the evidence, the court will reconsider that at the time.” Heath did not object.
The defendants first called Payton Weeks, the production forester and hunting club contact at Weyerhaeuser. He testified that in 2003, Heath phoned to ask how he might get a club member removed; Weeks replied that Weyerhaeuser was only the lessor and did not get involved in the clubs’ internal affairs, but normally clubs worked by a democratic process. Heath also confided to Weeks that he wanted to get rid of some Crazy Cajun members and take control of the lease. A few days later, McCarthy and three other Crazy Cajun members came to Weeks’s office and asked him the same question, but Weeks again refused to intervene.
IfiThe defendants’ next (and final) witness was Glynn Prosperie, Crazy Cajun’s de facto secretary. He admitted that his wife had accidentally driven through the food plot, but Heath totally overreacted: he lost his temper, used abusive language to her, threatened to “whip my ass,” and told him his camp might burn. Heath then came to the camp demanding that he (Prosperie) kick out two members. He *367 told Prosperie to call a meeting for that purpose, but advised that he (Heath) would not be there, because he would be at Weyerhaeuser getting the club evicted. When the members gathered, nobody wanted to expel McCarthy and the other member (referred to only as “Popeye”), but they decided Heath had been an irritant to the club and unanimously voted him out. Prosperie typed up the minutes and letter advising Heath of his ouster.
After this witness, the defendants reurged their motion for involuntary dismissal; Heath did not object. The court asked Prosperie several questions about the hunting camp, the club’s rules and how the club normally called its meetings. Counsel briefly cross-examined Prosperie, after which the court granted the involuntary dismissal. This appeal followed.

Discussion: Involuntary Dismissal

By one assignment of error, Heath urges the district court erred in granting the involuntary dismissal. He contends that under C.C.P. art. 1672 B, the court may grant the motion “at the close of the plaintiffs case, or at the close of all evidence, but not at points in between.” Gagliano v. Amax Metals Recovery Inc., 96-1751 (La.App. 4 Cir. 5/7/97), 693 So.2d 6889, writ denied, 97-1738 (La.10/13/97), 703 So.2d 619. Specifically, he argues that by granting the motion after hearing only two of the defendants’ 24 listed witnesses, the court breached its duty to hear all the evidence, including any rebuttal. He concludes that he showed by a preponderance that the defendants were guilty of “blatant violation” of his rights, and the defense evidence did nothing to weaken this.
The defendants, McCarthy, Martin and Weyerhaeuser, concede the statement of law in Gagliano but argue that the case further holds, “A party’s failure to object to a procedural irregularity is generally recognized to constitute such a waiver.” Because Heath did not object to the court’s action, he cannot now complain about it. They further contend that on the conflicting evidence presented, the court was completely correct to And that Crazy Cajun acted reasonably in revoking Heath’s membership. The court will not interfere in the internal affairs of a private association unless the action was “capricious, arbitrary, or unjustly discriminatory.” Jones v. NCAA, 96-2205 (La.9/12/96), 679 So.2d 381, 112 Ed. L. Rep. 1112.
Weyerhaeuser, by separate brief, also urges that Heath’s failure to object waived any complaint about the timeliness of the involuntary dismissal.
Involuntary dismissal is regulated by La. C.C.P. art. 1672 B, which provides:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then |7determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
This article clearly indicates that the plaintiff must have completed the presentation of his evidence prior to the granting of an involuntary dismissal. Taylor v. Tommie’s Gaming, 2004-2254 (La.5/24/05), 902 So.2d 380. The jurisprudence generally holds that the motion for involuntary dismissal may be made at the close of the plaintiffs case or at the close of all the evidence, but not at points in between. Gagliano v. Amax Metals Recovery, supra; Melady v. Wendy’s of New Orleans, *368 95-913 (La.App. 5 Cir. 4/16/96), 673 So.2d 1094.
The trial court has much discretion in deciding whether to grant a motion for involuntary dismissal, but must weigh and evaluate all evidence in order to make that decision. Taylor v. Tommie’s Gaming, supra. Ultimately, the court is required to weigh and evaluate all the evidence presented to .that point and grant the dismissal if the plaintiff has failed to establish his claim by a preponderance of the evidence. Thompson Packers Inc. v. Downey, 2001-2550 (La.App. 1 Cir. 11/8/02), 835 So.2d 774.
In Tommie’s Gaming, the supreme court found that the WCJ granted the motion for involuntary dismissal before the plaintiff had called all his witnesses or rested his case; the court found this premature and reversed the involuntary dismissal.
In Gould v. Gould, 28,996 (La.App. 2 Cir. 1/24/97), 687 So.2d 685, the plaintiff allowed a defense witness to testify out of order, during the plaintiffs case in chief. After the plaintiff rested his case, the defendant | ¿moved for involuntary dismissal, which the court granted. On appeal, Mr. Gould contended that the court must evaluate the motion “on the plaintiffs evidence, undiluted by the defendant’s evidence.” We rejected this argument, as there was “no showing that additional evidence from [the defendant] would have altered the district court’s ruling.” Id. at p. 4, 687 So.2d at 688. The supreme court later cited these. circumstances as sufficient to sustain the judgment in Gould v. Gould and to distinguish the case from Taylor v. Tommie’s Gaming, supra at p. 7,902 So.2d at 384.
In light of these considerations, we find no error in the district court’s grant of involuntary dismissal. Heath had completed the presentation of his case in chief, as required by Art. 1672 B. He did not timely object when the defendants reiterated their motion before they had presented their entire case, as is normally required to correct a trial error. Gagliano v. Amax Metals Recovery, supra. Finally, he has not shown how the presentation of additional defense evidence would in any way contribute to his own case in chief. Gould v. Gould, supra.
Ultimately, the district court had to decide whether, based on all the evidence presented, Heath had proved his case by a preponderance of the evidence. In order to nullify the club’s decision to expel him, Heath had to prove that this action was capricious, arbitrary, or unjustly discriminatory. Jones v. NCAA, supra. Heath candidly admitted breaking several of Crazy Cajun’s hunting club rules, offering excuses which even on the impassive record sounded petty and insincere. While he felt that other members ambushed him and ejected him from the club without any notice, McCarthy |9and Pros-perie testified that it was Heath who initiated the move to eject members and seize control of the Crazy Cajun lease, and actually called the meeting which he failed to attend; Weyerhaeuser’s club contact, Weeks, corroborated much of this. On this conflicting testimony, the district court was not plainly wrong to find that Heath failed to prove, by a preponderance of the evidence, that Crazy Cajun’s decision to expel him was capricious, arbitrary or unjustly discriminatory. Jones v. NCAA, supra. This assignment of error lacks merit.

Frivolous Appeal

By answer to appeal, the defendants seek damages for frivolous appeal under La. C.C.P. art. 2164. Specifically, they urge that Heath misread Gagliano, supra, and took an appeal that was com *369 pletely untenable because of his failure to object to the action at trial.
Heath responds that Gagliano is the only case holding that the wrongful grant of involuntary dismissal can be waived, and that in fact he had no meaningful opportunity to object before the district court granted the motion.
Damages for frivolous appeal are authorized by Art. 2164, but are awarded only when “it is obvious that the appeal was taken solely for delay or that counsel is not sincere in the view of law he advocates even though the court is of the opinion that such view is not meritorious.” Hampton v. Greenfield, 92-2770 (La.5/24/93), 618 So.2d 859; Black v. Lofland Co., 37,862 (La.App. 2 Cir. 2/26/04), 869 So.2d 264, writ denied, 2004-0787 (La.6/4/04), 876 So.2d 94.
|10The defendants have made no showing that Heath took this appeal solely for delay; aside from the imposition of court costs, there is no money judgment or mandatory injunction that has been delayed by the pursuit of the appeal. Moreover, Heath has astutely shown that Gagliano, supra, the case upon which the defendants principally relied, is the only statement in the jurisprudence holding that the untimely grant of involuntary dismissal may be waived for failure to object. He was certainly entitled to argue that the instant case was factually inapposite. The request for damages for frivolous appeal is denied.

Conclusion

For the reasons expressed, we affirm the judgment that dismissed Richard Heath’s claims. The request for damages for frivolous appeal is denied. Appellate costs are to be paid by the appellant, Richard Heath.
AFFIRMED; REQUEST FOR DAMAGES FOR FRIVOLOUS APPEAL DENIED.

. The directed verdict is available only in a jury trial setting. La. C.C.P. art. 1810. The equivalent device in a bench trial is the motion for involuntary dismissal. La. C.C.P. 1672 B. The mislabeled motion is treated as one for involuntary dismissal. Derbigny v. Derbigny, 34,672 (La.App. 2 Cir. 4/6/01), 785 So.2d 989.