PARRO, J.
 

 | ¡¡Farmco, Inc. (Farmco) and Brent A. Beauvais (collectively, plaintiffs) appeal from a judgment granting motions for involuntary dismissal and dismissing their claims for injunctive relief and/or damages against Robert Ray Morris, Frances L. Morris, Keith E. Morris, Roñada B. Morris, Zelotes A. Thomas, and Jacqueline M. Creer (collectively, defendants) in this matter involving a servitude of passage claimed by the defendants on property owned by the plaintiffs. We reverse the judgment and remand for further proceedings in accordance with this opinion.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 Farmco and Beauvais are the owners of several large tracts of land in West Baton Rouge Parish, having purchased this property at a United States Marshal’s sale on March 25, 1997, after its prior owners, Ashland Plantation, Inc. (Ashland) and Kenneth H. Kahao, defaulted on a 1979 debt owed to the Farmers Home Administration (FHA). The tract at issue in this litigation is identified as Tract D-4 on a map prepared for Ashland on April 7, 1994, by Wallace J. Hargrave. That map shows that a portion of the Farmco/Beau-vais property, Tract D-2, had been subdivided in 1983 into 18 lots comprising Chamberlin Subdivision. All of the Cham-berlin Subdivision lots front on Louisiana Highway 620, also known as “Section Road.” Between Lots 6 and 7
 
 [1]
 
 and Lots 11 and 12 are two 60’-wide passageways leading north to the back of the subdivision. Perpendicular to those passageways and running east-west along the back of all 18 lots of the subdivision is another passageway. These three passageways make up Tract
 
 D-⅛,
 
 and have been used by the defendants in this suit for access to their residences and to agricultural property north of the subdivision.
 

 Farmco and Beauvais filed this suit on July 26, 2006, asserting that they were the lawful owners of Tract D-4 and that the defendants were using their land without their permission or consent. The petition alleged that the unauthorized use of the property by the defendants had rendered the property unmarketable and caused financial loss to the plaintiffs. They sought monetary damages and back rentals for this Ruse of the property. The petition also stated that “Robert R. Morris and Frances Morris should be enjoined from any further use” of Tract D-4. No injunc-tive relief was sought against the other named defendants. But in the third paragraph of the prayer for relief, the plaintiffs prayed that:
 

 After all legal delays and due proceedings had, Defendants be declared to have no right to use the subject property and be found to have unlawfully possessed Plaintiffs (sic) Tract D-4 and that they be cast for damages, including back rentals all as appropriate in the premises and for all costs of this matter. (Emphasis added).
 

 
 *430
 
 On October 27, 2006, after several continuances, the court heard and denied the preliminary injunction and set the matter for trial.
 
 [2]
 
 Again, there were several continuances, and a bench trial was finally held on April 27, 2007.
 

 Before the trial began, a number of documents were submitted by the plaintiffs and admitted into evidence by stipulation of all counsel that they were authentic and relevant to the proceedings. These documents included maps of the property and established the current ownership of all the relevant properties.
 

 The plaintiffs’ first witness was George W.T. Ruple, the sole officer and director of Farmco, who identified the deed and proces verbal showing the property was sold to him and Beauvais at the U.S. Marshal’s sale in March 1997. Ruple testified that they had never given any of the defendants permission to use any portion of Tract D-4. Despite this, Robert Morris was using the easternmost 60’ passageway (between Lots 11 and 12) to get to his sugarcane fields behind the Chamberlin Subdivision. Keith and Roñada Morris and Zelotes Thomas were using that same 60’ passageway to gain access to their houses, as their driveways opened onto the easternmost passageway, and Jacqueline Creer was using the westernmost passageway for access to her driveway and house. Although the plaintiffs had developed and sold other portions of the property, Ruple testified that it was not possible to sell Tract D-4, because it was obvious that the defendants were using the property. Ru-ple said that Ms. Creer and Ms. Thomas had been using the tract ever since the plaintiffs purchased it. Although Keith and Roñada Morris bought their property later, their predecessor-in-title had also |4been using it for some time. There was a similar situation concerning the property owned by Robert and Frances Morris; although they purchased it after the plaintiffs’ purchase, their predecessor-in-title had also used the easternmost passageway to get to its sugarcane crop north of the Chamberlin Subdivision. Ruple testified that all of the passageways were being used for vehicular travel before he and Beauvais bought the property and that they existed in their present configuration at least since the Chamberlin Subdivision was developed in 1988.
 

 Ruple also identified an “Act of Predial Servitude” executed and recorded in 1987, in which Ashland granted Roy and Irma Nugent a servitude of passage over the easternmost 60’ passageway (between Lots 11 and 12) currently being used by Keith and Roñada Morris, Robert and Frances Morris, and Ms. Thomas; Ruple admitted he had been aware of this predial servitude for several years. The record also contains authentic acts showing that Roy and Irma Nugent bought Lot 12 from Ashland in 1986; in February 1993, the Nugents sold Lot 12 to Daniel L Miremont; Mire-mont sold it to Keith and Roñada Morris in March 1998; and in October 2006, they donated an undivided l/2000th interest in Lot 12 to Robert and Frances Morris. Robert and Frances Morris purchased their agricultural property north of Cham-berlin Subdivision from Ashland in December 2000.
 
 [3]
 

 Ms. Thomas identified an act of sale showing her purchase of Lot 11 in 1987. She testified that her relatives and family members drove on the 60’ passageway alongside her lot when they visited her.
 
 *431
 
 She also said that school buses turned around on that passageway and other people whom she did not know used it as a road. Ms. Thomas said people had been using that strip as a road ever since she bought her property. There were utility poles alongside the passageway, and utility repair and maintenance workers also used the passageway to get access to those poles.
 

 Following their testimony, plaintiffs’ counsel called Fred Stephens to the stand, but he was not present. Plaintiffs’ counsel assured the court that Stephens had been subpoenaed and that his testimony was needed to establish the value of the property in | ¡¡that area to prove damages.
 
 [4]
 
 He asked the court to continue the trial and issue a bench warrant for Stephens. The court denied the continuance, but agreed to issue a bench warrant for Stephens’ failure to appear under a subpoena. At that point, plaintiffs’ counsel stated, “I have no more case in chief, Your Honor,” and rested the plaintiffs’ case.
 

 Counsel for the defendants then moved for involuntary dismissal of the plaintiffs’ claims against their clients, arguing that upon the facts and law, the plaintiffs had shown no right to relief. Ms. Thomas and Ms. Creer argued they were entitled to be dismissed, because no injunctive relief had been sought against them in the petition, no damages had been proven, and no declaratory judgment had been sought. Keith and Roñada Morris reiterated those claims, and contended also that Ashland had granted them a predial servitude over the property at issue before the plaintiffs purchased the property; therefore they had the right to use the property. And since Robert and Frances Morris had been donated an undivided 1/2000 interest in that property, they also had the right to use the servitude.
 

 Plaintiffs’ counsel argued that the predial servitude was put on the property after the 1979 FHA mortgage was in place; therefore, by operation of LSA-C.C. art. 721, when the mortgaged property was sold to the plaintiffs after foreclosure on the superior FHA mortgage, it was free and clear of that conventional servitude by operation of law. He also argued that the petition stated a claim for declaratory judgment against all the defendants by asking in the prayer for relief that the defendants “be declared to have no right to use the subject property and be found to have unlawfully possessed” plaintiffs’ Tract D-4.
 

 The court took the motions for involuntary dismissal under advisement and asked the parties to brief the issues. On July 21, 2008, the court signed a judgment that granted the defendants’ motions and dismissed the plaintiffs’ claims with prejudice. This appeal followed.
 

 | fiANALYSIS
 

 Louisiana Code of Civil Procedure article 1672(B) states:
 

 In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to ren
 
 *432
 
 der any judgment until the close of all the evidence.
 

 The applicable standard to be used by a trial court to determine a motion for involuntary dismissal is whether the plaintiff has presented sufficient evidence to establish his case by a preponderance of the evidence.
 
 State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.,
 
 04-1311 (La.App. 1st Cir.6/15/05), 925 So.2d 1, 4. When considering a motion for involuntary dismissal, the trial court is not required to review the evidence in a light most favorable to the plaintiff, nor is the plaintiff entitled to any other special inferences in his favor. However, absent circumstances in the record casting suspicion on the reliability of the testimony and sound reasons for its rejection, uncontroverted evidence should be taken as true to establish a fact for which it is offered.
 
 Jackson v. Capitol City Family Health Ctr.,
 
 04-2671 (La.App. 1st Cir.12/22/05), 928 So.2d 129,131.
 

 A trial court has much discretion in determining whether to grant a motion for involuntary dismissal, but it is required to weigh and evaluate all evidence in order to make such a determination.
 
 Taylor v. Tommie’s Gaming,
 
 04-2254 (La.5/24/05), 902 So.2d 380, 384. An appellate court may not reverse a ruling on a motion for involuntary dismissal unless it is manifestly erroneous or clearly wrong.
 
 Boyd v. Allied Signal, Inc.,
 
 07-1409 (La.App. 1st Cir.10/17/08), 997 So.2d 111, 118,
 
 writ denied,
 
 08-2682 (La.1/16/09), 998 So.2d 105.
 

 After reviewing the pleadings and evidence in this case, we conclude that the plaintiffs established by a preponderance of the evidence that they own the property at issue. Tract D-4 was part of the property transferred to them in the U.S. Marshal’s sale on March 25, 1997. Nevertheless, that does not end the inquiry; the plaintiffs’ ownership of the property does not preclude the possibility that the defendants have |7acquired a right to use the property.
 

 With respect to the Morrises’ claim that they acquired a predial servitude of passage over the easternmost passageway by a juridical act, the plaintiffs argue that any such servitude was extinguished by operation of law, pursuant to LSA-C.C. art. 721. That article states:
 

 A predial servitude may be established on mortgaged property. If the servitude diminishes the value of the estate to the substantial detriment of the mortgagee, he may demand immediate payment of the debt.
 

 If there is a sale for the enforcement of the mortgage the property is sold free of all servitudes established after the mortgage. In such a case, the acquirer of the servitude has an action for the restitution of its value against the owner who established it.
 

 Foreclosure of a mortgage extinguishes a conventional servitude granted by the mortgagor after mortgaging the property.
 
 Campbell v. Louisiana Intrastate Gas Corp.,
 
 528 So.2d 626 (La.App. 2nd Cir. 1988). In the matter before us, Ashland mortgaged the property to the FHA in July 1979. The Act of Predial Servitude under which the Morrises claim to have acquired a servitude of passage was executed and filed in 1987. Therefore, under the clear terms of Article 721, even if the Act of Predial Servitude were sufficient to convey a right of passage over some of the property to some of the defendants, it was an inferior encumbrance on the property and was extinguished by the sale of the property for the enforcement of the FHA mortgage.
 

 In the alternative, the defendants claim they acquired a servitude of passage by acquisitive prescription.
 
 See
 
 LSA-C.C. arts. 646, 650(B), 705, 707, 740, and 742.
 
 *433
 
 The defendants introduced some evidence in connection with their cross-examinations of the plaintiffs’ witnesses. Yet, possibly because this ease was involuntarily dismissed before the defendants presented their case-in-chief, the record does not clearly show the nature and extent of the defendants’ and their ancestors-in-titles’ possession of the property at issue in this case. Therefore, there is insufficient evidence in the record to determine whether the defendants may have acquired a right to use part or all of Tract D^, either by acquisitive prescription or by some other means.
 
 See
 
 LSA-C.C. arts. 654 and 741.
 

 Because the plaintiffs established their ownership of the property by a [ ^preponderance of the evidence, the lower court erred in granting the defendants’ motions for involuntary dismissal. Since the defendants did not waive their right to offer evidence in the event the motions for involuntary dismissal were not granted, this case will be remanded to the trial court for a continuation of the trial to allow the defendants to offer evidence in support of their claims.
 

 We note also that it is clear from the record that the plaintiffs experienced mixed signals from the court as to whether testimony from their expert on damages, Fred Stephens, would be admitted in a later hearing. The trial transcript reflects that the court issued a bench warrant for Stephens’ appearance, which could be interpreted as an attempt to require him to appear and testify, but then denied the plaintiffs’ motion for a continuance of the trial to present that testimony. Because of this, the plaintiffs were forced to conclude the presentation of all the evidence they could put before the court and were unable to present the testimony of Stephens. Since we are remanding this case to the lower court for further proceedings, we also order the court to allow the plaintiffs to re-open their case for the admission of Stephens’ testimony.
 

 CONCLUSION
 

 For the above reasons, the judgment of July 21, 2008, granting the defendants’ motions for involuntary dismissal and dismissing the plaintiffs’ claims, is reversed. This case is remanded to the trial court for admission of expert testimony from Fred Stephens as to the plaintiffs’ alleged damages, as well as to allow the defendants to offer evidence on their case-in-chief. Costs of this appeal are assessed to the defendants.
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 McCLENDON JR., concurs without reason.
 

 [1]
 

 . The record does not indicate who currently owns Lot 6. Lot 7 is owned by Ms. Creer, Lot 11 is owned by Ms. Thomas, and Lot 12 is owned by Keith and Roñada Morris. Robert and Frances Morris own a tract of agricultural land north of Chamberlin Subdivision.
 

 [2]
 

 . The ruling denying the preliminary injunction was not appealed when rendered and was not assigned as error in this appeal.
 

 [3]
 

 . These documents were submitted by the defendants' counsel on cross-examination of Ru-ple.
 

 [4]
 

 . In briefs and oral argument to this court, further information concerning the circumstances surrounding Stephens’ non-appearance was revealed. However, because this information does not form part of the record, we are unable to consider it.